## Bell Telephone Company of Pennsylvania's Appeal.

Argued November 15, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*F. J. Woods,* with him *A. R. Bensinger,* for appellant.

*F. D. Gallup,* with him *E. G. Potter* and *W. D. Gal-
lup,* of *Gallup, Potter & Gallup,* for appellee.

OPINION BY PARKER, J., January 30, 1940:

This is an appeal by Bell Telephone Company of Penn-
sylvania from an order of a court of quarter sessions

dismissing an appeal where that court reviewed and sustained the validity of an ordinance of the borough of Eldred, the effect of which ordinance was to require the telephone company to remove its wires from a portion of Main Street in the borough or place the wires in a conduit under that street. We are in accord with the conclusion of the court below.

The telephone company, or its predecessor, has been serving the public and occupying the streets of the borough since 1898. In 1922 the borough, by ordinance, granted it a franchise which included the right to construct an underground conduit, and on May 10, 1934, passed the ordinance in question which required all persons or corporations having wires or cables over, across, or along Main Street, in said borough, between Central Avenue and Elm Street, a distance of 1,100 feet, to remove the same or place them in underground conduits. In 1934, the wires and poles in the district affected by the ordinance were principally those of the telephone company and high and low power lines and poles of the Bradford Electric Company. The power and light company removed its lines to another location outside the district to the satisfaction of the borough authorities, but the telephone company refused to comply and appealed to a court of quarter sessions for the purpose of testing the validity of the ordinance.

In the court below the appellant attacked the ordinance of 1934 as a violation of its contractual rights under the franchise ordinance and because the ordinance was alleged to be unreasonable. It has now abandoned the first contention and claims that the district defined was not a reasonable one, that the cost of placing the wires in a conduit would be so great as to make it impracticable and uneconomic to do so, and that there were no local conditions which reasonably supported the action of the borough council.

The General Borough Act of May 4, 1927, P. L. 519,

§2301 (53 PS §14561), provides: "Boroughs may define, by ordinance, a reasonable district within which electric light, electric power, telephone, and telegraph wires shall be placed underground in conduits, owned either by the borough or by corporations owning such wires, or by corporations organized for the purpose of laying such conduits and renting space therein." By §2305 of the same act (53 PS §14565), it is provided: "The court of quarter sessions of the county, upon the appeal of any person, may review any ordinance passed pursuant to this article, and may annul such ordinance, if deemed unreasonable. Such appeal shall be taken within thirty days from the approval of such ordinance."

By this statute the Legislature delegated to the borough, acting by ordinance, the right to fix "a reasonable district" where the owners of wires might be required to place such wires underground in conduits if they wished to continue to occupy the streets of such district. The Legislature thereby made the borough authorities the judges in the first instance of the necessity for such a change and empowered the borough to exercise the police powers of the state in accomplishing that result. The delegation of power was made subject to the provision that when, in any such case, the borough has acted, the court of quarter sessions of the county, on the appeal of any person, may review the ordinance and if it deems the same unreasonable "annul such ordinance". We think the legal effect of section 2305 was to vest in quarter sessions the duty, if called upon to act, of finding the facts involved in determining whether the ordinance was reasonable. Be that as it may, the court did find the elemental facts and concluded that the ordinance was in fact reasonable so that the order appealed from has the support of the municipal authorities and a court of quarter sessions. Our powers on review are not so extensive as those of the court of quarter sessions of a county as the same powers are not

given us on review. We are limited to a consideration of errors of law, which means that we may only reverse the order if the evidence is not sufficient to support the findings of fact or if the conclusions are so unreasonable, capricious, or arbitrary as to amount to an error of law, just as we are empowered to act on an appeal from a decision of the Public Utility Commission in the exercise of police powers.

It has long been an established principle of law that appellate courts will not substitute their judgment for that of the body to whom the exercise of discretion has been committed: *Phila. Elec. Co. v. Phila.*, 301 Pa. 291, 300, 152 A. 23; *Carlisle & M. St. Ry. Co.'s Appeal*, 245 Pa. 561, 91 A. 959; *Cameron v. Carbondale*, 227 Pa. 473, 76 A. 198.

It is now conceded by appellant that it was within the scope of the powers of the borough to pass an ordinance of this character, its reasonableness alone being attacked. "When the action of a Legislature is within the scope of its power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of the courts, but for the legislative body, on which rests the duty and responsibility of decision": *South Carolina St. Hwy. Dept. v. Barnwell Bros.*, 303 U. S. 177, 190, 191, 58 S. Ct. 510. It would therefore appear that there is a heavy burden resting on the appellant in order to obtain a reversal.

We take the essential facts from the findings by the court below. By the last census Eldred had a population of 1,128, and Main Street is its only through street running north and south. That street is part of a much used state highway. Until shortly before the ordinance was passed the paved part of the cartway varied in width from 22 to 49 feet but at that time it was widened so that it is now from 31½ to 66 feet wide. The section affected is the principal business section of the borough and on that street are two- and three-story stores and

other buildings. The appellant has now in the restricted area, extending about 1,200 feet, seven poles in the cartway and four poles in the grass plot between curb and sidewalk. These poles carry two cables, each approximately 1½ inches in diameter, and there are numerous service wires crossing from the east to the west side of the street. It is not satisfactory from an operating standpoint to construct an aerial system on a route west of Main Street due to the proximity to high power electric lines, but such a line might be constructed east of Main Street by turning corners and passing over private property. The borough has agreed to provide the right of way for such route without expense to the company. The cost of moving the lines to the east would be approximately $3,550 and of installing wires in an underground conduit, $8,100. The cost of maintaining an underground system would be less than for one overhead. The telephone company has offered to move its poles to other points on Main Street satisfactory to the borough, insofar as it is possible so to do, and maintain its lines there. The poles and wires are unsightly and detract from the general appearance of the street. To this point there is not at present any dispute as to the facts.

The appellant has excepted to findings by the court below that the cables or wires in the affected portion of Main Street have interfered with and will continue to interfere with the efficient fighting of fire; that the poles interfere with the orderly and convenient parking of cars and with the borough lights by casting shadows and creating dark areas. The appellant, as we have pointed out, also contends that the cost of installing an underground conduit is so great as to render the ordinance unreasonable and uneconomic as affecting the appellant.

A careful reading of all the evidence convinces us that it is sufficient to support the findings. There was evi-

dence that wires had interfered in the efficient control of a fire that had damaged two buildings in this borough, and in addition there was opinion evidence of individuals, with experience as firemen, that the wires would in the future necessarily interfere in combatting fires or in removing persons from burning buildings. The perils of fire are common to large and small places. The smaller places do not have a paid fire department and frequently do not possess a water system that is equal to those of the larger places. It is a matter of vital importance that firemen shall have at all times ready access to burning buildings and that their operations be not interfered with by obstructions in the streets.

There is not the slightest doubt that the poles as now located interfere with traffic. Even if the poles are moved some interference will remain as a certain number of poles properly spaced are essential to the support of wires and cables. Consequently the poles in this area can not be so placed that there will not be some interference with traffic either in the cartway or on the sidewalk. The esthetic features are not to be entirely ignored, and this with other features may be sufficient to ground a reasonable necessity for such improvements as are contemplated by the enactment of the ordinance.

The appellant advanced but one line of proof to sustain the burden on it of showing that the cost is so great as to be unreasonable. It multiplied the cost of the improvement by the number of boroughs in the state, obtaining a figure of $3,500,000. That may be interesting, but if we are to consider the economic aspect of this case the question is how the expenditure here will affect the income received here. We are given no evidence whatever upon which we could predicate anything more than a guess for we are furnished with no data as to the income derived from either local or long distance calls or the expense of maintaining this particular plant. The argument also ignores the fact that the Legislature

has deemed it wise that boroughs should, at least in congested areas, have the privilege of requiring utilities to place their wires underground. The Legislature having so determined, it only becomes a question of arranging the rates so that a proper revenue will be received by the utility. In so acting the Legislature was proceeding within its police powers.

Assuming these facts, we cannot say that the decisions of the borough authorities and court below were either arbitrary, capricious, or unreasonable. Much stress is laid on the fact that this borough has a small population and that therefore the improvement should not be required. The prime answer to this contention is that the Legislature made no distinction as to size. It did contemplate that an unreasonable burden would not be placed upon the utilities. In that spirit the borough council limited this ordinance to its most congested area and to a street which was a main thoroughfare for the borough and constituted a part of the state highway system. The smaller municipalities have enterprising citizens who take a just pride in keeping their streets up to date. Improvements in that respect have kept pace with the extension of hard-surfaced highways and the large increase in travel through the rural districts and more sparsely settled centers.

The appellant has failed to sustain the burden upon it.

The order of the court below is affirmed at the cost of the appellant.