Kurman et al., Appellants, *v.* Philadelphia Zoning Board of Adjustment et al.

Argued December 1, 1944. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Jacob Liebman,* for appellants.

*G. Coe Farrier,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for appellee.

*C. Laurence Cushmore, Jr.,* and *White & Williams,* for Overbrook Farms Club, intervenor.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 2, 1945:

This is an appeal from the order of the court below dismissing an appeal of the plaintiffs from the action of the Bureau of Engineering, Surveys and Zoning in refusing the plaintiffs a "use registration permit" or "certificate of variance" to authorize the plaintiffs' use of premises at 5831 Drexel Road, Philadelphia, as a place for conducting religious services over each weekend.

As the court below said: "The facts are not in dispute and the questions raised by the facts are whether it was necessary for the plaintiffs to obtain the Board's permission and, if so, whether the Board properly exercised its discretion in refusing permission." President Judge FINLETTER succinctly stated the facts and formulated the issue in this case as follows:

"Joseph Kurman, one of the appellants, is a rabbi of the Jewish Orthodox faith and the owner of the said premises, a detached building located in a district classified as 'A' Residential under the Zoning Ordinance. This building was designed for use as a dwelling and has been so used in the past. On April 30, 1943, Rabbi Kurman applied for and obtained a permit to use his premises as a one-family dwelling and as an office for him as a rabbi. Under this permit he used a room in his house as a meeting place for children whom he instructed in religious matters. He also organized a church group under the name of Congregation Toras Chaim and conducted services over each weekend.

"The Philadelphia Zoning Ordinance of August 10, 1933, provides in section 7 that buildings in an 'A' residential District may be used, inter alia, as '(1) Detached single-family dwellings. . . . (2) Churches, chapels or other places of worship.' Combinations of these two uses are neither listed *nor expressly prohibited,* and

should a building meet all the requirements for both types of uses as set forth elsewhere in the ordinance, no reason appears why such a building could not be used for both purposes.

"The dispute concerns the side yard on one of the sides of the building. If the building is used solely as a detached dwelling, the side yards may be only ten feet wide. If it is used as a church the side yards must be fifteen feet wide. In fact on one side of the building the side yard is only twelve and a half feet wide, if a bay window which projects from the building is taken into account." (Italics supplied.)

"Section 7(19)(a) provides: 'Every detached *single-family dwelling* shall have two (2) side yards, . . . neither of which shall be less than ten (10) feet wide.' Plaintiff's building complies with this requirement, but inasmuch as the side yard along the western side of the building is only twelve feet and six inches wide at one point, the building does not meet the requirements for use as a church, because section 7(19)(a) provides: 'Every *building, other than a dwelling,* shall have two (2) side yards, . . . neither of which shall be less than fifteen (15) feet, . . .'"

On each weekend this building is used as a church for a congregation of about fifty people. In October, 1943 the Bureau of Engineering, Surveys and Zoning notified Rabbi Kurman that he must discontinue religious services in this building unless he obtained a new Use Registration Permit. The rabbi's application was later refused by this Bureau, and on December 15, 1943, after due notice and hearing, the Board of Adjustment [1] in a paper captioned "Board of Adjustment Certificate of Variance," refused Rabbi Kurman any variance from the term of the Zoning Ordinance.

---

[1] This latter Board is the only one which has authority under the ordinance to pass upon a Certificate of Variance. Churches and other places of worship and dwellings are exempted from the regulation requiring a permit.

The Zoning Ordinance does not require an owner to obtain a Certificate of Variance when he seeks to divert his building to another use for which it has not obtained a permit, but a person who does so divert the use of his building is subject to a fine, and the Board of Adjustment has the authority to issue a Certificate of Variance in a proper case. Section 8 of the Zoning Act of May 6, 1929, P. L. 1551, provides:

"The Board of Adjustment shall have the following powers: . . . 3. To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest. . . ."

The court below decided that the Board of Adjustment not only did not abuse its discretion in refusing the Certificate of Variance applied for, but also that it gave obedience to the mandate of the Zoning Ordinance. Since this building was being used for a place of religious worship, i. e., as a synagogue, its surroundings had to conform to the already quoted provisions of the Ordinance referred to.

The court below pertinently says:

"The plaintiffs cannot complain of undue hardship for they are not being deprived of the use of this building for which it was built and heretofore used. They urge that the yard is less than fifteen feet at only one point, by reason of a bay window, and hence, if they desire to use this building for a purpose other than a dwelling they need not destroy it, but can meet the requirements of the Zoning Ordinance by a comparatively minor alteration at that one point."

We would not be warranted in holding that the Board of Adjustment must authorize the use of a building both as a dwelling and also as a place of public worship when the side yards of the building do not conform to the requirements of the Ordinance.

Appellant contends that the principal use of the building was for the dwelling of a single family and that the use of one room on the first floor for religious serv-

ices over the weekend was merely an incidental or accessory use. The answer to that is that the mere fact that the use of a building as a place of religious worship is "merely incidental" to some other more frequent use does not relieve the owner from his duty to conform to the requirements of the law so far as they apply to that building when it *is* used for the incidental purpose. For example, if a dwelling house was occasionally used as a theater, it at the time it was so used would have to conform to all the requirements which relate to the maintenance of a theater. Requirements which have been violated in this case are for the protection of the people who frequent such places. Those who framed section 7(19)(a) of the Philadelphia Zoning Ordinance of August 10, 1933, evidently believed that if a building was used for any purpose other than a dwelling it should have two side yards neither of which shall be less than fifteen feet in width.

The Act of May 6, 1929, P. L. 1551, which first authorized ordinances in cities of the first class, contains in Section 3 a list of the "Purposes in View" when "such regulations" are made; among these purposes are "to secure safety from fire, panic and other dangers. . . . to provide light and air, to prevent the overcrowding of land" et cet. In requiring in its Zoning Ordinance the side-yards of a building used as a church to be of the width stated, the city reasonably attempted to serve these proper "purposes." *Not* to sustain the Board of Adjustment in its refusal of the Certificate of Variance applied for would be a disservice to the public welfare. *Florsheim Appeal*, 348 Pa. 98, 34 A. 2d 62, cited by appellant is inapplicable to this case, for in that case there was neither allegation nor evidence that any requirements of the city ordinance had not been met by the owner of the building in question.

The order of the court below is affirmed.