## Schaub Appeal.

Argued July 20, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Alan D. Riester,* with him *Charles H. Bracken,* for appellant.

*Leonard Boreman,* with him *Solis Horwitz, Thomas L. Jones,* and *Boreman, Parker, Krause & Horwitz,* for appellee.

OPINION BY ERVIN, J., November 16, 1955:

On appeal the board of adjustment of Brentwood Borough reversed the decision of the building inspector and granted to Whitehall Terrace Shopping Center the right to "construct (and maintain) a facility or place for the parking of automobiles" on three lots under lease or agreement of sale to the applicant. The lower court dismissed the appeal from the board and affirmed the order of the board and directed the issue of the permit as applied for.

The three lots in question are located on the northwesterly side of Brownsville Road and at the present time are zoned partly Residential "A" and partly Residential "B" and partly Commercial "C." On two of the lots in question there are residences. There was a residence on the third property but it has been removed. To the west and northwest the lots are abutted by property zoned for commercial and industrial purposes. The property to the west and southwest is now occupied by a large shopping center. On the northeasterly side the lots in question are abutted by property zoned for residence but actually used by an Episcopal Church. Evidence was offered before the board that the church intends to build an addition to the present church structure.

Brentwood Borough is in the South Hills section of Allegheny County adjacent to the City of Pittsburgh and running through that borough is Brownsville Road, a main thoroughfare connecting with Pittsburgh. Route 51, also known as Clairton Boulevard, a high speed, four-lane highway, intersects with Brownsville Road at the southerly end of the borough.

The applicant has its shopping center between Brownsville Road and Route 51. There is now and has been a heavily congested traffic condition on Brownsville Road necessitating the elimination of all parking on the northwesterly side thereof from Route 51 northwardly to Brentridge Avenue. For all this area there is provided total off-street parking for 769 cars at the present time and the proposed parking area would add to that an additional 237 spaces, 159 of which will be on the lots in question and 78 from redevelopment of existing facilities. The testimony shows that the Whitehall Terrace Shopping Center alone needs a minimum of 700 spaces for present requirements. The Whitehall Terrace Shopping Center has a large ground level parking area which permits parking of 168 cars. In the rear thereof there can be parking of 231 additional cars. One of the primary problems is that there is only one artery between Route 51 and Brownsville Road, which is a short, steep street known as Terrace Court, and off this street is the exit from the front parking area and the exit and entrance of the rear parking area. Persons using Route 51 turn into Terrace Court, traveling in an easterly direction and proceed to Brownsville Road, where, as is common on Thursday, Friday and Saturday nights and at all times during any heavy shopping period, the ground level parking area is completely filled. Persons then on Brownsville Road have no place to turn for parking facilities. This particular condition would be alleviated by permitting the proposal of the applicants. As a part of the owners' proposal there would be added thereto a ramp to allow access to the already existing parking areas. The owners also propose to construct a roadway from the proposed parking area to Route 51. The result of this would not only be to give additional parking area but to enable relief of traffic from the already existing

parking areas by traveling the new roadway rather than using the already congested Terrace Court and Brownsville Road.

Mr. Donald M. McNeil, a recognized traffic authority, testified that more parking facilities are necessary and an additional exit to Route 51 is essential; that the present proposal is the only way to solve the practical difficulties which now exist and that a denial of this application would result in unnecessary hardship not only to the owners of the lots in question but also to the inhabitants of the borough as a whole.

The lower court, after taking additional testimony and after considering the return of the board, stated: "True the return to this court of the zoning board might have indicated more specifically the board's concern with the problem of undue hardship and its consideration of the public welfare, yet it is a detailed return, and the pertinent and material matters appearing in the record were supplemented by the additional testimony we took in open court. We visited the area here involved in the presence of counsel for both sides, and this view constrains us after a careful consideration of the entire record now before us to the conclusion that the zoning board has properly departed from the strict letter of the ordinance, that practical difficulties, undue and unnecessary hardships warrant the granting of the variance, and that such allowance to the applicants for use for free parking space for their customers will observe the spirit of this ordinance and secure public welfare."

On an appeal from the board of adjustment to the court of common pleas that court had the power to hear the appeal and the right to hear evidence and to make such decision as, under the evidence and the applicable principles of law, was just and proper. It had the right to consider and dispose of the matter on the mer-

its. *Lindquist Appeal,* 364 Pa. 561, 73 A. 2d 378; *Dooling's Windy Hill v. Springfield Twp.,* 371 Pa. 290, 89 A. 2d 505; *Rolling Green Golf Club Case,* 374 Pa. 450, 458, 97 A. 2d 523.

On appeal from a decision of a court of common pleas in a zoning matter the case comes before an appellate court as on certiorari and where there is adequate evidence to support the findings of the court below and the proceeding is free from error of law and there has been no manifest abuse of discretion, the decision will not be reversed. *Lindquist Appeal,* supra; *Dooling's Windy Hill v. Springfield Twp.,* supra; *Rolling Green Golf Club Case,* supra.

The procedure statutorily prescribed for testing the validity of substantive provisions of a zoning ordinance or the method of its administration is through application to the board of adjustment by one aggrieved by the decision of a borough administrative officer in respect thereof and, thereafter, by appeal to the court of common pleas if the decision of the board of adjustment is likewise adverse. This remedy or procedure is exclusive. *Jacobs v. Fetzer,* 381 Pa. 262, 112 A. 2d 356.

If a borough council refused to amend its ordinance to reclassify the applicant's property, a court of equity does not have the power to compel such action. *Jacobs v. Fetzer,* supra.

The law is well established that a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zoning regulations on the entire district. *Michener Appeal,* 382 Pa. 401, 406, 115 A. 2d 367.

The plight of the owner must be due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself. The board, being an

administrative and not a legislative body, may not review or amend the legislatively enacted rules as to uses, or amend the ordinance under the guise of a variance or determine that the ordinance itself is arbitrary or unreasonable. If there be a hardship which is common to the whole neighborhood, the remedy is to seek a change in the zoning ordinance itself. Nothing less than a showing of hardship special and peculiar to the applicant's property will empower the board to allow a variance. If a zoning board were to be allowed to grant variances to individual properties because of changes in the district which might perhaps call for a complete reclassification, it would, by such a piecemeal process, be virtually enacting zoning legislation instead of merely performing its function of adminstering the zoning law prescribed by the governing body of the municipality. *Michener Appeal,* supra.

Will the owners in the present case suffer an unnecessary or peculiar hardship if they are not permitted to use their property for non-fee, off-street parking? We believe that they will. The property in question is surrounded on all sides, not by property used for residential purposes but entirely by property used for commercial, industrial or religious purposes. The property is hemmed in on one side by a large store district and on the other side by a large church. Both of these uses bring great numbers of automobiles and great traffic congestion on the highway upon which these lots front. While it is true that two of the properties still contain residences, their use for such is highly undesirable. This is not a case like *Michener Appeal,* supra, because in that case the lot was surrounded on three sides by properties not only zoned for residential purposes but actually so used. It fronted on the same street as the abutting properties and certainly the abutting properties were subjected

to the same disturbances as was the Michener property. Clearly the Michener property suffered no hardship which was not also suffered by its abutting neighbors.

The present case can be easily distinguished from *Catholic Cemeteries Assn. Zoning Case,* 379 Pa. 516, 109 A. 2d 537, wherein a variance was sought which would have permitted the use of 185 acres of ground in a second class township for a new cemetery. This ground was in no different situation from that of any other ground in the residential district in which it was situate and therefore suffered no peculiar or exceptional hardship. The present application does not involve a large tract of ground. We were advised at argument that it involved less than two acres of ground. The size of the tract in the present case certainly did not prohibit the board of adjustment from granting a variance.

It is true that in *Lukens v. Ridley Twp. Zoning Bd. of Adjustment,* 367 Pa. 608, 80 A. 2d 765, it was said: "A petition to change and reclassify approximately 16 acres in Tract No. 2 appears, because of the large acreage involved, to be an application for rezoning and not for a variance. . . ."

However, in *Jacobs v. Fetzer,* supra, it was said: "But different rules do not obtain for relieving against oppressive zoning restrictions according to differences in the relative sizes of affected properties. All properties within the same zoned district are subject to the same zoning regulations. If, however, a property owner desires to test the constitutionality or validity otherwise of zoning regulations, application to the Board of Adjustment, in the first instance, for relief, followed by an appeal to the common pleas from the Board's denial of relief, is the means for raising legal questions for judicial determination. Nothing was said in the *Lukens* case from which it could even be inferred that

if the local legislative body refuses to re-zone, when so requested, the applicant can then invoke equity's jurisdiction and there have the ordinance amended, if not actually nullified. Indeed, the opinion quoted approvingly from Taylor v. Moore, supra, to the effect that 'where a remedy or method of procedure is provided or a duty enjoined by any act of assembly, the directions of such act shall be strictly pursued, and we have held that such remedy or procedure is exclusive.' "

The applicant in this type of matter has an additional hurdle to negotiate. The result must not clash with the general scheme of zoning provided by the ordinance. It must be in harmony with the objectives sought to be accomplished. To use the language of the Enabling Act, it must "not be contrary to public interest . . . and so that the spirit of the ordinance shall be observed and substantial justice done." Act of May 4, 1927, P. L. 519, art. XXXIII, §3307, added 1947, July 10, P. L. 1621, §93, 53 P.S. §15211.7. The Enabling Act also provides: "Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets, to secure safety from fire panic and other dangers . . . to facilitate the adequate provision of transportation. . . ." Act of May 4, 1927, P. L. 519, art. XXXIII, §3303, added 1947, July 10, P. L. 1621, §93, 53 P.S. §15211.3.

The zoning ordinance in the present case provides: "Whereas, it is the desire of the Council of the Borough of Brentwood to lessen congestion in the streets, to secure safety from fire, panic and other dangers . . . and to facilitate the adequate provision of transportation. . . ."

The testimony clearly reveals that Brownsville Road, upon which the lots in question front, is highly congested with traffic because of the large shopping

district abutting the lots on one side and the use of the church property which abuts the lots on the other side. To remove some of these vehicles from the highway during church services or during heavy shopping hours will certainly help to relieve traffic conditions not only on Brownsville Road but also on Terrace Court and Route 51 as well as upon other highways in the immediate neighborhood. This will promote one of the principal objectives sought by the Enabling Act and also sought by the zoning ordinance. To grant the variance will be in the public interest and will help in the observance of the spirit of the ordinance and will do substantial justice. A few property owners may be slightly discomforted but the great majority of the residents of the borough will be convenienced. This is not the usual case of extending a business district into a residential district and thereby creating an entering wedge which might eventually result in the destruction of the residential district. Here the church property is a natural boundary between the commercial and residential properties. It will probably prevent a further extension of the commercial district in that direction.

The order of the court below is affirmed; costs on this appeal to be borne by the Borough of Brentwood.