## Jehovah's Witnesses Appeal.

Argued November 16, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Michael Hahalyak,* for appellant.

*David W. Craig,* with him *Owen B. McManus, Jr., Moorhead & Knox,* and *Brandt, Riester, Brandt & Malone,* for appellee.

OPINION BY ERVIN, J., March 20, 1957:

This case is here on a writ of certiorari directed to the Allegheny County Court. That court affirmed a decision of a board of adjustment in which the grant of a variance from the provisions of a borough zoning ordinance was refused.

The R-1 residential district, in which appellants' property is located, expressly permits the following: "Uses—One-family dwelling; Church; Public or Parochial School (certified by State Board of Education). . . ." It provides: "(8) Off-Street Parking—Church, school, auditorium, stadium, and similar places of assembly, one car space (300 sq. ft.) for every 5 seats or fraction thereof.

"(9) None of the uses listed in Item 8 above shall be permitted within ¼ mile of each other."

The Board of Adjustment and the lower court found, on adequate evidence, that the appellants' proposal violates the ¼ mile requirement in that the proposed location is 877 feet from the nearest place of assembly and that it violates the off-street parking requirements in that 17 parking spaces are required under the ordinance and only 13 spaces will be provided.

Our review is as on certiorari in its broadest sense and we examine the record to see whether there is evidence to sustain the court's findings and whether the proceeding is free from a violation of law and any man-

ifest abuse of discretion. This is so whether or not testimony on the issue was taken in the court below. The scope of our inquiry is determined by the breadth of the certiorari issued by this Court and not by the power exercised by the court below, *Landau Advertising Co., Inc. v. Zoning Board of Adjustment,* 387 Pa. 552, 128 A. 2d 559; *Schaub Appeal,* 180 Pa. Superior Ct. 105, 118 A. 2d 292.

The Board of Adjustment and the court below found that appellants' land is located at the intersection of Bethel Church Road and Fort Couch Road, which intersection is heavily traveled and is further complicated by the presence of traffic islands in the intersection; that the erection of appellants' church at this intersection would substantially increase traffic dangers and congestion; that appellants' land is no different from other land in the area and presents no unique or unusual feature peculiar to it as distinguished from other land in the area; that the zoning ordinance was in effect at the time appellants purchased the land here involved. Appellants concede that traffic regulation is a proper exercise of police powers but they argue that these powers may not be exercised against a church.

In *Schaub Appeal,* supra, at page 113, we pointed out that "The Enabling Act also provides: 'Such regulations shall be made in accordance with a comprehensive plan, and. designed to lessen congestion in the streets, to secure safety from fire panic and other dangers . . . to facilitate the adequate provision of transportation. . . .' Act of May 4, 1927, P. L. 519, art. XXXIII, §3303, added 1947, July 10, P. L. 1621, §93, 53 P.S. §15211.3." Our Supreme Court, in *McSorley v. Fitzgerald et al.,* 359 Pa. 264, 269, 270, 59 A. 2d 142, passed upon the validity of a regulation which protects

against the dangers of traffic congestion in the following language: "Those attacking the constitutionality of such a law as that which is here under consideration obviously labor under the mistaken notion that its purpose is merely to cater to the convenience of the owners and operators of motor vehicles; on the contrary its effect may be to interfere with the perhaps greater convenience of parking on the public streets; its real purpose is to promote the larger and more general good of the community by freeing the streets of the impediments and perils arising from dangerous and often intolerable conditions of traffic congestion. And since the Act is concerned with the regulation of the transportation of persons and property along the highways of the municipality, and since the evils it seeks to remedy vitally affect conditions for the transaction of business, the prevention of accidents, the effective operations of fire and police forces, and, in general, the enjoyment of many phases of city life and activities, its justification stems directly from the exercise of the police power, which is the supreme power of government." To the same effect see *Vine v. Board of Adjustment of Village of Ridgewood,* 136 N.J.L. 416, 56 A. 2d 122; *O'Brien v. City of Chicago,* 347 Ill. App. 45, 105 N.E. 2d 917; McQuillin, Municipal Corporations, Vol. 8, §25.132; Yokley, Zoning Law, 2d Ed., §212.

The zoning ordinance here involved does not prohibit churches from R-1 residential districts. On the contrary, it expressly permits churches in such districts subject to the above mentioned restrictions. A number of cases have been cited by the appellants from other jurisdictions declaring as unreasonable and arbitrary zoning ordinances which expressly prohibit churches from residential districts. If we had such an ordinance in this case we would give great considera-

tion to the question of striking it down as unreasonable and arbitrary. We are here concerned, however, with an ordinance which imposes certain conditions with respect to the site upon which a church may be erected. Our present problem is to determine whether these regulations or conditions bear a rational relation to the public health, safety, morals or general welfare and are not unjustly discriminatory or arbitrary or unreasonable or confiscatory in their application to a particular or specific piece of property. *White's Appeal,* 287 Pa. 259, 134 A. 409; *Lord Appeal,* 368 Pa. 121, 125, 126, 81 A. 2d 533.

The grouping of a number of public assembly buildings in a residential district would obviously create additional traffic hazards. The fire protection facilities of single family residential districts are usually designed to handle the fire fighting problems presented by residences with few inhabitants. They are not normally designed to handle buildings occupied by large numbers of people. Street and traffic control facilities of a residential district are not normally prepared to handle the large concentration of people or automobiles which results from public assembly use. It is reasonable to suppose that several public assembly structures located closely together would create an additional threat to the safety of their occupants and the traveling public. Proximity requirements are designed for the purpose of lowering the hazards which can arise from the close grouping of assembly buildings or structures which are exceptional in a residential district. We are of the opinion that there was ample evidence to justify the findings below to the effect that both regulations here involved bear a reasonable relation to the safety of the public. The evidence shows that the intersection, where appellants propose to locate their

church building, is on a traffic route connecting two major arterial routes, U.S. 19 and State 88. It also constitutes a connection between the county system of belt routes. Motor vehicle traffic, largely trucks, is heavy, especially on week-ends. In addition to passenger cars, large trucks hauling freight, steel, chemicals and gasoline pass through this intersection. The vehicles leaving appellants' lot would enter the intersection opposite the islands located in its middle. An automobile leaving the lot would enter on that portion of the road which is made by the island into a one-way lane northward; thus, if such an automobile were to proceed southward on Bethel Church Road, it would have to enter the one-way lane northward and go far enough to make a U-turn and then re-enter the highway and come back through the intersection in question. The double island and the three-way intersection at appellants' site and the additional automobiles of appellants' congregation would certainly further complicate and increase the traffic hazard already existing at this point.

Certainly freedom of worship does not mean that churches are exempt from reasonable police power regulations. Our Supreme Court in *Kurman et al. v. Phila. Zoning Board,* 351 Pa. 247, 40 A. 2d 381, determined that setback requirements are applicable to properties used for church purposes. The concepts of religious freedom, freedom of speech and the press which are embodied in the First Amendment have never been construed as absolute rights and beyond the power of reasonable regulation under the police power. *Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses,* 117 N.E. 2d 115, 123. The language used at page 123 is applicable to the present case: "It is quite evident that the members of the appellee could

be killed just as dead going to and from church as going to and from a theater or a basketball game. It is a proper exercise of the police power to protect appellee's members from their own negligence as well as from the negligence of the traveling public. There would be just as much logic in holding that the members of appellee when going to church were not required to comply with the traffic regulations as in holding that the appellee is not required to make reasonable provisions for a lessening of the traffic hazards by off-street parking.

"If it was a proper exercise of the police power for the city by its zoning ordinance to require the appellee to comply with the average setback line of the residences, which only has a very remote bearing on traffic hazards, a fortiori it was a reasonable exercise of the police power to require appellee to provide space for 25 cars to park off the streets. The right of appellee to exercise its religious freedom is not violated in either case."

In *American Communication Association v. Douds,* 339 U.S. 382, 397, Chief Justice VINSON states: "When the effect of a statute or ordinance upon the exercise of First Amendment freedoms is relatively small and the public interest to be protected is substantial, it is obvious that a rigid test requiring a showing of imminent danger to the security of the Nation is an absurdity. We recently dismissed for want of substantiality an appeal in which a church group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential areas. Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Porterville, 338 U.S. 805, 1949."

If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388. To the same effect see *Bell Tel. Co. of Pa.'s Appeal,* 138 Pa. Superior Ct. 527, 531, 10 A. 2d 817.

There is not one word in the record to form the slightest basis for the intimation in appellants' oral and written argument that the appellees "do not like Jehovah's Witnesses" or their "religious practices." The appellees do not object to the placing of a church in the residential district on a lot which complies with the conditions of the ordinance. It has not been suggested that the appellants be relegated to a commercial district or another municipality. There is no basis for charging the board with discrimination. Appellants argue that inasmuch as "there are churches in the very same neighborhood that have been permitted to operate within the quarter-mile area without objection" the denial of this permit constitutes discrimination and deprivation of rights contrary to the equal protection clause of the 14th Amendment.

The only evidence of another church located within ¼ mile of a similar building is the St. Thomas More Roman Catholic Church. The evidence further showed this to be a temporary structure which never came before the board of adjustment. If other public assembly buildings exist contrary to the terms of the ordinance they are, as said by Judge BROWN of the court below, either violations or variances (if not pre-existing non-conforming uses).

"It has been held quite uniformly that permitting some persons to violate a zoning regulation does not preclude enforcement against another. . . . The circumstances in each case might well have been substan-

tially different." *Hasley's Appeal,* 151 Pa. Superior Ct. 192, 193, 194, 30 A. 2d 187; *Valicenti's Appeal,* 298 Pa. 276, 284, 148 A. 308.

Evidence of other variances is clearly inadmissible. *Ventresca v. Exley,* 358 Pa. 98, 102, 56 A. 2d 210.

The appellants will not be subjected to any particular hardship because the evidence shows that they could obtain another location in a residential area on the same road as appellants' property and about 2000 feet therefrom which would not violate the above mentioned conditions. Their argument that a strict enforcement of the restrictions might prohibit appellants from having a church in the borough does not seem to be in accord with the facts as developed by the evidence. The appellants knew or ought to have known of the conditions applicable to their property at and prior to the time of its purchase. In *Catholic Cemeteries Assn. Zoning Case,* 379 Pa. 516, 522, 109 A. 2d 537, it was said: "The assertion of the court below that 'a literal enforcement of the provisions of the ordinance would here result in unnecessary hardship' is substantiated by only two other statements found in its opinion. The court declared 'it would *probably* be impossible to find a suitable tract of land within any reasonable distance of built-up areas that would not be in more or less proximity to residential properties', and . . . '[the owners] in the case at bar are being completely deprived of the right to sell—as to the owners—and being completely deprived, as to the corporation, of their right to dedicate, maintain and use at least an equally important use, to wit, a religious use of burial grounds.' Neither of these reasons is sufficient to support the claim of hardship. That it may *probably* be impossible to find another suitable tract is not the necessary hardship envisioned by the Act."

In *Michener Appeal,* 382 Pa. 401, 406, 115 A. 2d 367, Chief Justice STERN said: "The law is well established that a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zoning regulations on the entire district." See also *Schaub Appeal,* supra.

The appellants' lot does not possess any unique or unusual characteristics which would make it unusable for residential use.

We have examined this record and find that there is evidence to sustain the lower court's findings and we can find no violation of law or any manifest abuse of discretion.

Order affirmed.