Kacar, Inc. and Pasquale and Josephine DeMilio, Appellants *v.* The Zoning Hearing Board of the City of Allentown, Appellee.

Argued March 4, 1981, before Judges MENCER, ROGERS and MACPHAIL, sitting as a panel of three.

*William G. Sherr,* with him *Howard N. Stark,* for appellants.

*Daniel K. McCarthy, Efron, Black, Epstein and Prokup,* for appellee.

OPINION BY JUDGE MENCER, July 17, 1981:

Kacar, Inc., and Pasquale and Josephine DeMilio (appellants) have appealed from an order of the Court of Common Pleas of Lehigh County which upheld the denial of a constitutional challenge to a provision of the zoning ordinance of the City of Allentown and the denial of a special exception under that provision. We affirm.

In 1977, the City of Allentown adopted Ordinance 12260 which amended the Codified Ordinances of the City of Allentown by adding, *inter alia,* the following provisions:

  1362.04  ALLOWANCE AS SPECIAL EX-
  CEPTION

It shall be unlawful to establish an Adult Book Store, Adult Motion Picture Theater or Cabaret within five hundred feet (500′) of any school, church or residential zone, except as a

special exception in accordance with the procedure set forth in Section 1361.02. The Zoning Hearing Board may authorize the establishment of an Adult Book Store, Adult Motion Picture Theater or Cabaret within five hundred feet (500') of a school, church or residential zone as a special exception only if the following findings are made by the Board:

(a) That the applicant has presented to the Board a petition which indicates approval of the proposed use by 51 per cent of the persons owning, residing or doing business within a radius of five hundred feet (500') of the location of the proposed use. The applicant shall have attempted to contact all eligible locations within this radius, and must supply a list of all addresses at which no contact was made. The circulator of the petition shall have subscribed to an affidavit attesting to the fact that the circulator personally witnessed the signatures on the petition and that the same were affixed to the petition by the persons whose names appear thereon.

In 1978, the appellants established an adult bookstore and adult theater at 22 North Sixth Street in Allentown in an area zoned for business use. After being cited for engaging in a nonpermitted use, they applied for a special exception permit which was denied. In this appeal, the appellants contend that 1) Ordinance 12260 is unconstitutional because it is violative of the standards of *Young v. American Mini Theatres, Inc.,* 427 U.S. 50 (1976); 2) the ordinance was improperly applied to their property; 3) the ordinance is exclusionary; and 4) the ordinance improperly delegates legislative powers. We have carefully examined the appellants' contentions and we find them to be without merit.

I. Ordinance 12260 is not violative of the standards set forth in *Young v. American Mini Theatres*

In *Young v. American Mini Theatres,* the City of Detroit had adopted an ordinance which required that adult theaters be located at least 1,000 feet from adult bookstores, cabarets, and other specified uses and at least 500 feet from a residential zone. A majority of the Court held that the Detroit ordinance did not interfere with the rights of the owners of adult theaters under the first amendment to the U.S. Constitution.

> [W]e have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

*Id.* at 62.

It is conceivable that a zoning provision which curtails the use of a property for commercial distribution of adult materials could violate the first amendment. In the recent decision of *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497 (7th Cir. 1980), for example, the Village of Westmont was enjoined from enforcing a zoning ordinance which treated adult theaters as a special exception. The court held that the ordinance was impermissibly vague because it did not define "adult theaters," nor did it express guidelines for enforcement. The court felt that these deficiencies posed too great a threat to first amendment freedoms.

The same court, however, has also upheld a zoning ordinance which treated adult theaters as a special ex-

ception. *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980). The court reconciled the two decisions by pointing out that the Peoria ordinance *did* contain adequate definitions and guidelines for enforcement. Furthermore, the court found that the Westmont ordinance, unlike the Peoria ordinance, was intended to regulate the showing of adult films in the community. *Entertainment Concepts, Inc., III v. Maciejewski*, 631 F.2d at 503 n. 4, 504.

Ordinance 12260, as we construe it, does not regulate the showing of adult films or the distribution of adult books, except in those establishments where such activity is undertaken for commercial gain. The ordinance expressly defines "Adult Book Store" as a "commercial establishment having as a substantial . . . portion of its stock in trade" books, etc., dealing with adult material. The definition of "Adult Motion Picture Theater" is less explicit but does clearly refer to an establishment which presents adult motion pictures to its "patrons," *i.e.*, paying customers. If the appellants wish to distribute their books or exhibit their films free of charge, the ordinance would not inhibit their right to do so in any portion of the City.

Based upon these factors, we find that, like the ordinance at issue in *Young v. American Mini Theatres*,

> apart from the fact that the [ordinance treats] adult theaters [or book stores] differently from other theaters [or bookstores] and the fact that the classification is predicated on the content of material shown in the respective theaters [or sold in the respective book stores], the regulation of the place where such films may be exhibited [or such books may be distributed] does not offend the First Amendment.

427 U.S. at 63. This brings us to the Supreme Court's "equal protection" analysis of the case.

After an extensive review of case law, the plurality of the Court in *Young v. American Mini Theatres* concluded as follows:

> Moreover, even though we recognize that the First Amendment will not tolerate the total suppression of erotic materials . . . , it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate that inspired Voltaire's immortal comment. Whether political oratory or philosophical discussion moves us to applaud or to despise what is said, every schoolchild can understand why our duty to defend the right to speak remains the same. But few of us would march our sons and daughters off to war to preserve the citizen's right to see 'Specified Sexual Activities' exhibited in the theaters of our choice. Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.

*Id.* at 70-71. The court then found that the "city's interest in the present and future character of its neighborhoods" was justified and "adequately supports its classification of motion pictures." *Id.* at 72.

The extensive record in the present case indicates that the city fathers of the City of Allentown have a justified concern that the business and residential districts of the city are in serious danger of blight and decay because of the flight of businesses and residents to the surrounding suburbs. They enacted Ordinance 12260 because of an understandable belief that the concentration of "adult" businesses in a neighborhood

discourages people from locating their homes and businesses nearby.

This is the same problem faced earlier by the City of Detroit, and the City of Allentown, although smaller, was fully justified in adopting the same solution. Thus, if "erotic materials" are a less-protected form of speech, as the plurality in *Young v. American Mini Theatres* has asserted, then Ordinance 12260 easily survives the equal protection analysis. Unfortunately, the case is not that simple.

Only four members of the Supreme Court agreed, in *Young v. American Mini Theatres,* that erotic materials may be treated differently than other forms of speech. Four of the justices argued vociferously that the Detroit ordinance impermissibly classified various types of protected speech, based upon their content. *Id.* at 85 (STEWART, J., dissenting). The "swing vote" was cast by Justice POWELL, who considered the equal protection issue in terms of *United States v. O'Brien,* 391 U.S. 367 (1968), in which the Supreme Court avoided a traditional approach to the problem.

Historically, equal protection cases have been analyzed by applying one of two distinct tests. If a government action affects a fundamental right or interest, the courts undertake a "strict scrutiny" of the legislation. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618 (1969). Similarly, if the government action is based upon an inherently suspect classification such as race, nationality, or alienage, then the courts will subject the legislation to "close judicial scrutiny." *See, e.g., Graham v. Richardson,* 403 U.S. 365 (1971). These cases require a very thorough consideration of the relationship between the desired goal and the means employed to reach it.

On the other hand, in cases where these considerations are absent, courts are quite reluctant to overturn govern-

mental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted. . . .

*Vance v. Bradley,* 440 U.S. 93, 97 (1979) (footnotes omitted). Therefore, the government action will be upheld if the means employed are rationally related to the end to be achieved.

This two-tiered approach to equal protection analysis has been criticized because some cases fall between the two extremes. *Craig v. Boren,* 429 U.S. 190, 212 (1976) (STEVENS, J., concurring). Cases involving distinctions based upon sex,[1] age,[2] or income[3] have been particularly troublesome. Indeed, Justice MARSHALL has argued at different times that these cases require a three-tiered analysis[4] or a multifactor sliding-scale analysis.[5]

Justice POWELL, however, has taken the position that there is only one equal protection test which is applicable to all cases: whether the legitimate state interest furthered by the government action outweighs the personal rights it endangers. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 173 (1972). *See also* Gunther, *The Supreme Court, 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harvard L. Rev. 1 (1972). It is important to remember this background when considering Justice POWELL's appli-

---

[1] *Craig v. Boren.*

[2] *Vance v. Bradley.*

[3] *Dandridge v. Williams,* 397 U.S. 471 (1970).

[4] *Vance v. Bradley,* 440 U.S. at 112.

[5] *Dandridge v. Williams,* 397 U.S. at 520-21.

cation of *United States v. O'Brien* in his concurring opinion in *Young v. American Mini Theatres.*

In *O'Brien,* the Supreme Court was considering the constitutionality of a federal statute which imposed criminal liability on any person who burned his draft card. The defendant had argued that "his act of burning his registration certificate was protected 'symbolic speech' within the First Amendment." 391 U.S. at 376. The Court rejected this argument.

> We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms

is no greater than is essential to the furtherance of that interest. We find that the 1965 Amendment to §12(b)(3) of the Universal Military Training and Service Act meets all of these requirements, and consequently that O'Brien can be constitutionally convicted for violating it.

*Id.* at 376-77 (footnotes omitted). In essence, the Court applied the "single test" for equal protection in *United States v. O'Brien.* Justice POWELL would have applied this same "single test" in *Young v. American Mini Theatres.*

We believe that Ordinance 12260 of the City of Allentown satisfies the standards set forth by Justice POWELL in *Young v. American Mini Theatres.* The government action did further a substantial and legitimate state interest without unnecessarily infringing on individual rights. In reaching this decision, we have been guided by the opinion of the Superior Court in *Jehovah's Witnesses Appeal,* 183 Pa. Superior Ct. 219, 130 A.2d 240, *appeal dismissed,* 355 U.S. 40 (1957). The *Jehovah's Witnesses* decision held that the imposition of dimensional zoning requirements on a church did not improperly infringe on the first amendment guaranty of religious freedom. The Superior Court applied a similar test in *Jehovah's Witnesses* to that espoused by Justice POWELL in *Young v. American Mini Theatres.*

In American Communication Association v. Douds, 339 U.S. 382, 397, Chief Justice VINSON states: 'When the effect of a statute or ordinance upon the exercise of First Amendment freedoms is relatively small and the public interest to be protected is substantial, it is obvious that a rigid test requiring a showing of imminent danger to the security of the Nation is an absurdity. We recently dismissed for want of substantiality an appeal in which a church

group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential areas. Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Porterville, 338 U.S. 805, 1949.'

If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Euclid v. Ambler Realty Co., 272 U.S. 365, 388. To the same effect see Bell Tel. Co. of Pa.'s Appeal, 138 Pa. Superior Ct. 527, 531, 10 A.2d 817. *Jehovah's Witnesses Appeal,* 183 Pa. Superior Ct. at 226-27, 130 A.2d at 244.

We have already demonstrated that Ordinance 12260, as we construe it, does not regulate expression or speech; it regulates economic exploitation of certain films and books.[6] The City of Allentown "has silenced no message, has invoked no censorship, and has imposed no limitation upon those who wish to view them." *Young v. American Mini Theatres,* 427 U.S. at 78 (POWELL, J., concurring).

If the City of Allentown had adopted an ordinance to "regulate the *showing* of sexually explicit movies" rather than the "location of 'adult' uses," then we would be forced to conclude that the government interest was related to the suppression of free expression. *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d at 504 (emphasis added). Instead, the purpose of the ordinance was to prevent the deterioration of the business and residential neighborhoods of the City of

---

[6] For this reason, Ordinance 12260 does not conflict with the Supreme Court's recent statement that "a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech." *Consolidated Edison Co. v. Public Service Commission,* U.S. , 100 S.Ct. 2326, 2332 (1980).

Allentown with minimal infringement of constitutional guarantees. This is a legitimate and substantial governmental interest.[7]

Since Ordinance 12260 of the City of Allentown meets the standards set forth by both Justice STEVENS and Justice POWELL in *Young v. American Mini Theatres*, we hold that the ordinance represents a constitutional exercise of the zoning power by the City of Allentown.[8]

## II. Ordinance 12260 was not improperly applied to appellants' property

The appellants contend that the 500-foot dispersion requirement was incorrectly applied by the City of Allentown. They argue that the "feet" referred to in Section 1363.04 must be measured along the public streets of the city, rather than along a straight line, since other provisions of the ordinance refer to "1,000 linear feet" and a "radius of 500 feet." We disagree.

---

[7] *See* Sections 105 and 604 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10105, 10604 (purposes of Act include prevention of blight, preservation of character of municipalities, and minimization of foreseeable problems). *See also* Section 2 of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §1702 (expressing similar purposes) ; *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A.2d 277 (1947) (upholding the constitutionality of the Urban Redevelopment Law and the use of police powers to execute its purposes).

[8] The present case is distinguishable from *Schad v. Borough of Mount Ephraim*, U.S. , 49 U.S.L.W. 4597 (1981). In *Schad*, the United States Supreme Court struck down a local zoning ordinance which totally excluded "live entertainment" from the Borough. The opinion of the Court indicates that, if the Borough had adopted a less intrusive restriction, such as the one adopted by the City of Detroit in *Young v. American Mini Theatres*, the result would have been different. *Id.* at , 49 U.S.L.W. at 4600. *Schad* did not address the equal protection issue which *Young v. American Mini Theatres* failed to resolve. *Id.* at n. 4, 49 U.S.L.W. at 4598 n. 4.

While the ordinance is somewhat ambiguous, we believe that the plain and simple meaning of all three terms would require a measurement along a straight line. The difference in terminology may be attributed to the fact that the term "radius" is used in describing the measurement of a two-dimensional area while the terms "feet" and "linear feet" refer to a one-dimensional measurement of distance. We need not decide the question, however, because the evidence clearly shows that the property would still be within 500 feet of at least two churches, even if the appellants' method of measurement were employed.

### III.   Ordinance 12260 is not exclusionary

The next contention of the appellants is that the ordinance has the effect of excluding adult bookstores and adult theaters from the City of Allentown. The zoning hearing board found that "[t]here are various areas in the City of Allentown in which adult book stores and adult motion picture theaters may be located either as a matter of right or as special exceptions." Report of Zoning Hearing Board in No. 37344, at 5 (1979). This finding was based upon testimony in the record which was not rebutted by the appellants. Therefore, the appellants' contention must fail. *BP Oil, Inc. v. Zoning Hearing Board of the Borough of Brookhaven,* 37 Pa. Commonwealth Ct. 258, 389 A.2d 1220 (1978).

We note that the appellants have phrased this issue in terms of the "fair share doctrine." The fair share doctrine applies to residential housing, usually in the context of housing for low-income families. *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977). We are unaware of any case in which it has been applied to commercial uses. Even if the doctrine were applicable to commercial uses, however, we could not conclude from

the record before us that the amount of land available in the City for the appellants' proposed use is inadequate.

## IV. Does Ordinance 12260 impermissibly delegate legislative powers?

The appellants contend that Section 1362.04(a) improperly delegates legislative power to the local landowners and residents. They cite *Perrin's Appeal,* 305 Pa. 42, 156 A. 305 (1931), in support of this contention. We need not decide the issue, however, since the zoning hearing board expressly found that *none* of the other prerequisites for a special exception set forth in Section 1362.04 had been satisfied. Since the appellants do not challenge these findings, we would be required to uphold the denial of a special exception regardless of whether Section 1362.04(a) impermissibly delegates legislative power.

## Conclusion

For the various reasons set forth in this opinion, we hold that the Court of Common Pleas of Lehigh County properly upheld the denial of a constitutional challenge to Ordinance 12260 of the City of Allentown and also properly upheld the denial of a special exception under that ordinance to Kacar, Inc., and Pasquale and Josephine DeMillio.

Order affirmed.

## Order

And Now, this 17th day of July, 1981, the order of the Court of Common Pleas of Lehigh County, dated January 16, 1980, which affirmed the decision of the Zoning Hearing Board of the City of Allentown, in the above captioned matter, is hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.