460 A.2d 1088

**Bessie LAYNE,**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH.**

**Appeal of CITY OF PITTSBURGH.**

Supreme Court of Pennsylvania.

Argued March 10, 1983.

Decided May 4, 1983.

Reargument Denied June 24, 1983.

D.R. Pellegrini, City Sol., Gretchen G. Donaldson, Pittsburgh, for appellant.

E.J. Strassburger, Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

McDERMOTT, Justice.

This case arose from the denial by the Zoning Board of Adjustment of the City of Pittsburgh of appellee's request to occupy the property she leases in Pittsburgh as a boarding house. That decision, as affirmed by the Court of Common Pleas of Allegheny County, was based upon the fact·that appellee's property is located in an R–4 residential district where under § 937.02 of the Pittsburgh Code boarding homes are not permitted. The Commonwealth Court,[1] however, reasoned that boarding homes could not be rationally excluded from the R–4 residential districts when rooming houses were allowed in such districts. Therefore, that court held § 937.02 of the Pittsburgh Code to be unconstitutional as violative of the equal protection of the law. We now reverse.

▮▮▮ Initially, we note that zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except where it is obvious that the classification has no substantial relationship to public health, safety, morals or general welfare. *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965); *Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964). In addition, when the constitutionality of a zoning ordinance is attacked, there is a presumption that the ordinance is valid and that the municipal legislative body acted with the purpose of serving the public welfare. The burden is on the challenger to rebut this presumption and prove that the ordinance in question is clearly unconstitutional. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975); *Bilbar*

1. *Layne v. Zoning Board of Adjustment,* 64 Pa.Cmwlth. 258, 439 A.2d 1311 (1982).

*Construction Co. v. Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958).

In the instant case, it is clear that the legislative body of the City of Pittsburgh has classified rooming and boarding houses as different entities for zoning purposes. Section 903.02(b) of the Pittsburgh Code provides,

> " 'Boarding house' means a building or portion thereof, other than a hotel, containing not more than one dwelling unit, if any, *where meals and lodging are provided* for persons not residing in the dwelling unit." (Emphasis added)

And, Section 903.02(r) notes,

> " 'Rooming house' means a building or portion thereof other than an apartment hotel or a hotel, containing not more than one dwelling unit, if any, *where lodging is provided without meals* for persons not residing in the dwelling unit." (Emphasis added)

Despite this meal-service distinction, the Commonwealth Court found no real difference relevant to zoning purposes between the boarding and rooming house. In doing so, they relied primarily upon the testimony of Mr. Brown, a city zoning administrator who noted: "A boarding home, in the general sense, where people merely live there, it's their place of residence and have at least one meal a day provided to them, I don't see much difference between that and a rooming house." (N.T. 12, 9/4/80)

We do not find Mr. Brown's testimony sufficient to rebut the presumption in favor of the constitutionality of the ordinance, nor do we find that the classification distinction between boarding and rooming houses fails to bear a substantial relationship to the health, safety, morals or general welfare of the community. Rather, the record reveals that the legislature's purpose in making a distinction between these entities was to exclude commercial institutions from residential districts.[2] Within this design, a distinction

2. Mr. Brown, the zoning administrator, testified:

based upon the availability of meal service—a service which necessarily invokes the city's health code—is sufficiently related to the health, safety and general welfare of the community, so as not to offend the equal protection clause of our constitution. The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. *National Land and Investment Co., supra.*

For the reasons stated, we do not find it necessary to set aside the determination of the local legislative body in this case.

Therefore, the order of the Commonwealth Court is reversed.

NIX, J., files a dissenting opinion in which LARSEN, J., joins.

FLAHERTY, J., files a separate dissenting opinion.

NIX, Justice, dissenting.

I agree with the Commonwealth Court that exclusion of boarding homes from R-4 residential districts when rooming houses are allowed in such districts is not supported by a reasonable basis.

Rooming houses in cities of the class as Pittsburgh are as much, if not more of a transient trade as boarding homes. Further, I question the accuracy today of equating a boarding home which serves one or even two meals with a commercial restaurant.

Actually, it appears that rooming houses are more commercial in nature because the business of renting rooms in large cities is frequently more transient than boarding

Well, the rationale was set up before my time, some time between 1950 and 1958, and as I gather, through the years, the difference they had in mind at the time was that a boarding house appeared or was more of a commercial use since it's usually more of a transient trade, and *you're feeding people, something of a restaurant type use,* and for that reason they placed a boarding home in a commercial district. (Emphasis added).

homes that are essentially stable residences with a family-type atmosphere.

The majority sees a relationship to the health, safety and general welfare of the community in the distinction based upon the availability of meal service. That distinction has "no real difference relevant to zoning purposes." *Layne v. Zoning Board of Adjustment, City of Pittsburgh,* 64 Commonwealth Ct. 258, 265, 439 A.2d 1311, 1315 (1982). Especially when an equal protection of the laws challenge is raised we must closely scrutinize to ensure that regulations adopted pursuant to zoning power are not unreasonable, arbitrary or confiscatory.

[T]he power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labelled for the preservation of health, safety and general welfare...

*Eller v. Board of Adjustment,* 414 Pa. 1, 6, 198 A.2d 863, 865–866 (1964), *quoting Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A.2d 712 (1963).

Therefore I dissent.

LARSEN, J., joins in this dissenting opinion.

FLAHERTY, Justice, dissenting.

I dissent. The city zoning administrator's testimony contained an acknowledgment of the absence of any meaningful distinction between rooming houses and boarding houses, and the city has failed to establish an evidentiary basis for excluding boarding houses from an R–4 district where rooming houses are permitted. Even if a boarding house were regarded as having a "commercial" character, due to its functional similarity to an inn, the nature of a rooming house is no less inn-like, despite its lack of meal-service, and the latter is no less "commercial" than the former. A distinction between boarding houses and rooming houses, based on the availability of meal-service, embodies no signif-

icant difference relevant to legitimate zoning goals, and is, therefore, violative of equal protection.

It is to be noted, too, in response to the matter of scope of judicial review of zoning ordinances as addressed by Mr. Justice McDermott, that review must be sufficiently strict to constitute a meaningful inquiry. *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 452 A.2d 1337 (1982).