## Edward Sullivan, Appellant v. Zoning Board of Adjustment, Appellee.

Argued April 2, 1984, before Judges ROGERS, PAL-LADINO and BARBIERI, sitting as a panel of three.

*Robert S. Esposito,* with him, *Austin J. McGreal,* for appellant.

*Mary Rose Cunningham,* Chief Assistant City Solicitor, with her, *Mark A. Aronchick,* City Solicitor, for appellee.

*Irvin Stander,* for intervening appellee.

OPINION BY JUDGE ROGERS, June 14, 1984:

Edward Sullivan has appealed from an order of the Court of Common Pleas of Philadelphia County affirming a decision of the City of Philadelphia Zoning Board of Adjustment upholding the denial by the Department of Licenses and Inspections (L & I) of his application for a zoning permit or, in the alternative, a variance,[1] which would allow him to construct a one story 10½ by 13 feet structure to house a trash baler located at the site of his nonconforming junkyard.

---

[1] The application which is the subject of this appeal was filed on January 9, 1979. The appellant filed applications for a use permit to construct a structure to enclose the baler on October 21, 1977 and on May 16, 1978. The Zoning Board of Adjustment refused to grant these requests on the ground that the use was not permitted in a residential district. The appellant did not appeal either decision. The city also filed a complaint in equity on November 8, 1978 alleging *inter alia,* that the appellant was maintaining a baler without a use registration permit and seeking injunctive relief from the operation of the baler. A consent decree was entered February 13, 1979 which required the appellant to "cease and desist from all use of the baler" until the Zoning Board of Adjustment determined that either a use registration permit or a variance was warranted.

We agree with the zoning board and the court of common pleas that the appellant did not prove his entitlement to any variance.

The appellant's property was purchased by his grandfather in 1912 and was used by the latter as a junkyard from 1914 until his death in 1943. The open air storage of junk and its processing became a non-conforming use of the property under the terms of the city's zoning ordinance after its enactment in August, 1933. In 1943, ownership of the property passed to the appellant's aunt, Rose Sullivan, who continued to use it as a junkyard. In 1956, L & I granted Rose Sullivan a zoning permit for the erection of a six foot high masonry wall along at least one of the property's street fronts. In 1963, Rose Sullivan ceased operating the junkyard and rented the property to her brother Thomas. The use of the property made by Thomas from 1963 to 1977 is a matter of dispute by the parties. The appellant, Edward Sullivan, purchased the property from Rose Sullivan in 1977 and indisputably has used the property as a junkyard since then.

The zoning district in which the property is located is R-10A where the storage or baling of junk or the dismantling or wrecking of used motor vehicles is not a permitted use.[2] The lot seems to be about 13,660 square feet in area. There is one structure on it, part of which was built in 1914 and the remainder in 1929. The proposed new one story structure would be located 30 feet from the existing building.

L & I refused the zoning permit because "the erection of a one story baler on the same lot with an existing structure-junk shop and the storage of junk on an open lot . . . creates a condition of two structures on

---

[2] The storage or baling of junk, scrap metal, rags, waste paper and/or used rubber and the dismantling or wrecking of used motor vehicles, storage and sale of dismantled, partially dismantled, inoperative or wrecked vehicles or their parts is a permitted use in the G-2 General Industrial District if a Zoning Board of Adjustment Certificate is obtained. Section 14-508(2)(a) & (b) of the Philadelphia Zoning Code.

one lot whereas neither of the structures have their own lot lines, rear yard, side yards and open area. . . . This condition is not permitted in the district''; and also on the ground that the use of the property as a junkyard had been terminated as a matter of law pursuant to Section 14-104(13) of the Philadelphia Zoning Code. That provision, as we will see later, provides that certain nonconforming uses conducted in the open air (including as the appellant concedes, his operation) shall be discontinued at the expiration of five years from the effective date of the amendment to the zoning ordinance which causes the use to be nonconforming. In its decision, L & I referred to a letter dated January 17, 1966 from the city's chief of the zoning section to Rose Sullivan which stated that "[t]his is to notify you that your non-conforming use of the subject property is registered with the Department of Licenses and Inspections in accordance with Title 14-104-Par. 13 and such use must be discontinued by May 1, 1966.'' Both Rose and Edward Sullivan claim never to have received this letter and so did not heed it.

At the zoning board hearing of Edward Sullivan's appeal, three neighbors intervened. Four hearings were held between June, 1979 and January, 1981. The zoning board's decision affirming L & I's action was based on the following conclusions:

7. The Board concludes that there has been a discontinuance of the junkyard use of the premises for at least three consecutive years during the period from 1965 to 1977, and that the junkyard use of the premises must therefore be considered as abandoned under the provision of Section 14-104(5) of the Philadelphia Zoning Code.

8. The Board also concludes that Applicant's request for an extension of a non-con-

forming use under the provisions of Section 14-104(7) of the Philadelphia Zoning Code does not meet the requirements of said Code provisions, because the extension is proposed in a separate structure; contrary to the provisions of Section 14-104(7) and Section 14.211.1 (R-10A Residential) of the Philadelphia Zoning Code.

9. The Board concludes that the subject property located in a R-10A Residential district was being used for the open air storage of junk, an industrial use; that said use was conducted or maintained on . . . less than 25% of the lot area . . . ; said junk yard use is therefore directly subject to the Discontinuance provisions of Section 14-104(13) of the Philadelphia Zoning Code; that the City of Philadelphia notified the owner of the premises on January 17, 1966 that said junk yard must be discontinued by May 1, 1966; and that the said junk yard lost its nonconforming status as of May 1, 1966.

The court of common pleas, which did not receive additional evidence, affirmed the decision of the zoning board.

The appellant has appealed from the court's order and makes the following arguments: (1) that he had not abandoned the nonconforming use; (2) that Section 14-104(13) of the Philadelphia Zoning Code is unconstitutional; (3) that, even if Section 14-104(13) is not unconstitutional, it is unenforceable against the appellant because of laches; (4) and that the zoning permit should have been granted because the proposed structure housing the baler was an addition necessary for the natural expansion and accommodation of the increased trade of his junkyard enterprise.

No additional evidence having been received by the trial court, our duty is to determine whether the

zoning board committed an abuse of discretion or made an error of law. *Rieder Appeal,* 410 Pa. 420, 188 A.2d 756 (1963).

A. Section 14-104(5)(b) of the Philadelphia Zoning Code and Abandonment of the Nonconforming Use

Section 14-104(5) of the Philadelphia Zoning Code is entitled Discontinued Use. Subsection (b) provides that:

> A non-conforming use when discontinued for a period of more than three consecutive years shall be considered abandoned and may not be resumed, and any subsequent use of the land or structure must comply with the use requirements of the district in which it is located, subject to the provisions of paragraph (6) [Reconstruction of Demolished, Destroyed, or Condemned Structures] below.

The burden of proving abandonment rests upon the party so asserting, here the city and the intervening neighbors. *Township of Upper Moreland v. Gaunt,* 16 Pa. Commonwealth Ct. 334, 328 A.2d 556 (1974). The burden is that of showing that the owner or occupier of the property intended to abandon the use and that the use, consonant with this intention, was actually abandoned. *Smith v. Board of Zoning Appeals of the City of Scranton,* 74 Pa. Commonwealth Ct. 405, 459 A.2d 1350 (1983).

In *Marchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 84, 95, 277 A. 2d 176, 183 (1971), we wrote that "[a]s distinguished from mere discontinuance, the concept of the term 'abandonment' includes the intention to abandon. Consequently, the abandonment of a nonconforming use and the consequent termination of any legal rights thereto results from a concurrence of facts, circum-

stances, and the intention of the owner of the premises or other person entitled to the use.'' The intent cannot be inferred from or established by a period of nonuse alone, but must be shown by the owner or occupier's overt acts or failure to act, such as written or oral statements evincing an intent to abandon the use, structural alterations to the building inconsistent with the continuance of the nonconforming use, or failure to take some step such as license renewal necessary to the continuance of the use. *Smith* at 407-408, 459 A.2d at 1352.

The effect of Section 14-104(5)(b) declaring that discontinuance for three years shall be considered to be abandonment is to create the presumption of an intention to abandon the nonconforming use. This presumption will carry the protestant's burden of proving an intent to abandon only if no contrary evidence indicating an intent to continue the use is introduced by the owner or occupier. *Id.* at 408-409, 459 A. 2d at 1353.

The zoning board heard such testimony concerning the use of the property during the years 1963 to 1977. The testimony on behalf of the appellant came from the appellant and members of his family who testified that they worked at the property during the years in question and that junk was stored, treated and sold there. Customers testified that they delivered to or bought junk at the property during the years in question. The testimony on behalf of the city and the intervenors came from residents of the neighborhood and from one Thomas Sullivan, also a nephew of Rose Sullivan, who rented the property from 1963 until 1977. The residents testified that they did not observe any business being transacted between 1963 and 1977 when they walked by the property; that the gate was closed except when trucks would come in and out once

or twice a week; and that the yard was swept and bare. Thomas Sullivan, who admitted that for family reasons he was not on speaking terms with the appellant, testified that he operated a junkyard located near the property involved in this suit; that he used the property in question for storage; that he never did any buying or selling there; that the property had no electrical or phone service; and that it was not listed in either the yellow or white pages of the telephone directory.

The board made the following findings of fact upon which it based its conclusion that "there has been a discontinuance of the junkyard use of the premises for at least three consecutive years during the period from 1965 to 1977, and that the junkyard use of the premises must therefore be considered as abandoned under the provision of Section 14-104(5) of the Philadelphia Zoning Code":

5. The evidence presented on behalf of the applicant related to the continued use of the property for a junk yard during the period from 1963 to 1977 . . . but was contradicted by the following evidence:—

(a) The testimony from many of the residential neighbors established that the premises were not used from 1963 to 1977 in the active pursuit of a junk yard business, but at most was used for some accessory storage of trucks and materials by the Sullivan junk business located at Tilton and Westmoreland, about two blocks distant from the subject site. . . .

(b) The records of the Bell Telephone Co. and the Philadelphia Electric Co. establish that the subject premises had no phone connection whatsoever shown in either the Bell Telephone

Co. White or Yellow books during the 12-year period from 1965 to 1977; nor was there any record of any electrical service from the Philadelphia Electric Co. at the premises during the 12-year period. . . .

6. After carefully considering all of the evidence presented by both parties on the question of the continued use of the premises without interruption as and for a junk yard during the period from 1965 to 1977, the Board finds that there has been a discontinuance of the premises for that purpose for at least three consecutive years during the period from 1965 to 1977, and that the junk yard use of the premises must therefore be considered abandoned under the provisions of Section 14-104(5) of the Philadelphia Zoning Code.

The zoning board's conclusion is premised solely on the discontinuance provision of the ordinance. As we have seen, this provision provides only a presumption of intention which may be rebutted by proof of facts inconsistent with that intention. The testimony of the appellant, members of his family who worked on the property during the years in question and customers was to the effect that junk was stored, treated, bought and sold there. Although Thomas Sullivan on direct examination denied in general terms that he stored any junk on the property, he admitted on cross-examination that he stored "cast iron, scrap, steel, batteries, big aluminum that we didn't have room to store at the other place, mattresses. Oh, I can go on and on." The storage of junk is certainly a use of the property consistent with the intention not to abandon the use of the property as a junkyard.

As concerns the neighborhood witnesses' testimony of not having seen junkyard activities, the case of

*Hilltown Township v. Horn,* 13 Pa. Commonwealth Ct. 248, 320 A.2d 153 (1974), is quite similar. There the owner testified to his use and his intention to continue to use land as a quarry but neighbors testified to having seen no activity on the land. We held that the record evidence indicated an intention to continue, not abandon, the use, and, quoting from the trial court's opinion, wrote:

> Many witnesses testified that they never observed any quarrying operations on the premises, but most of them frankly admitted that they were not on the premises but only passed it by travelling on the road. Additionally, considering the limited nature of the operation, it is not surprising that most people would not have observed its taking place. However, the fact that it was limited in nature does not necessarily indicate that it was nonexistent. . . . The limited quarry operations as testified to by [two employees] . . . , and as uncontroverted, clearly indicates lack of intention to abandon. There was testimony from a number of witnesses that during the period in question they purchased stone at the quarry.

*Id.* at 253, 320 A.2d at 156.

No intention to abandon having been shown, we hold that the zoning board erred as a matter of law in concluding that the nonconforming use had been abandoned.

B. Sections 14-104(7) and 14-211.1 of the Philadelphia Zoning Code and the Extension of a Nonconforming Use

The appellant also argues that the zoning board erred in concluding that Sections 14-104(7) and 14-211.1 forbid the construction of the one story structure

sheltering the baler to which he contends he is entitled as an extension of his nonconforming use.

Section 14-104(7) is entitled Extensions of Structures Containing Non-conforming Uses and provides that:

No structural extensions or additions to a structure containing a non-conforming use shall be made after July 15, 1957, which, when added to all structural extensions and additions made since the use first began to be non-conforming, shall cause the aggregate gross floor area of all such structural extensions and additions to exceed 10% of the gross floor area of the structure when the use first began to be non-conforming, subject to the following provisions:

(a) Any such structural extensions or additions shall be in conformity with the area and height regulations of this Title for the district where the structure is located, and shall be contained within the boundaries of the lot occupied by the structure at the time the use first began to be non-conforming; and

(b) All such structural extensions or additions shall be in conformity with the provisions of paragraph (9) [Increases in Floor Area] below.

The board wrote that the requirements of Section 14-104(7) were not met, in part, "because the extension is proposed in a separate structure." On the contrary, the fact that the proposed structure is a separate structure, *not* an extension of a structure containing a nonconforming use, demonstrates the inapplicability of Section 14-104(7), which deals exclusively with the extension of buildings.

Section 14-211.1(2) provides area, dimensional and other regulations for the only use permitted in the R-

10A Residential District, that of, dwelling houses. The zoning board found that if the proposed one story structure were permitted to be built, it would result in two structures being on the lot. This, the board concluded, would violate Section 14-211.1 since neither structure would have its own lot lines, rear yard, side yards and open area. Section 14-211.1 clearly reveals no explicit prohibition of two structures on one lot. But the board's rationale is beside the point. The holding of *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa. Commonwealth Ct. 183, 187, 446 A.2d 716, 718 (1982) is:

> [T]hat where the expansion of a nonconforming use . . . is over property acquired *before* the adoption of a zoning ordinance establishing that use as nonconforming, the owner may enclose the open-air portion of his operation without obtaining a variance, provided that the open-air portion has been "an integral part of the property used in the furtherance of the nonconforming purpose." In Re Pierce's Appeal, 384 Pa. 100, 119 A.2d 506, 507 (1956). (Emphasis in original.)

The appellant seeks to enclose an open air portion of his lot which had been used in a lawful nonconforming fashion. Therefore, not only do Sections 14-104(7) and 14-211.1 not expressly forbid more than one structure on the single lots, the appellant would be entitled as of constitutional right to enclose portions of his lot previously used in his business by housing the baler absent a showing that he thereby offended an open space requirement, in which case he would need a variance. *See Jenkintown Towing Service* at 189-190, 446 A.2d at 719. However, the plan in the record shows the proposed baler structure to comply with all dimensional requirements.

## C. The Constitutionality of Section 14-104(13) of the Philadelphia Zoning Code

The zoning board held that the appellant lost his entitlement to continue the nonconforming use of the property on May 1, 1966 pursuant to Section 14-104-(13). Neither the zoning board nor the court of common pleas considered the question of the constitutionality of the provision raised by the appellant:[3]

Section 14-104(13) provides that:

(a) In all residential districts included in Chapter 14-200 of this Title, the following nonconforming uses of land, as specified hereinafter, shall be discontinued and shall not be resumed or maintained at the expiration of five years from the effective date of this ordinance, or five years from the effective date of any amendment to this Title which causes said use to become nonconforming.

(1) Those uses conducted or maintained in the open air which are permitted in any industrial district included in Chapter 14-500 of this Title [Sections 14-508(2) (a) permits the storage or baling of junk if a Zoning Board of Ad-

---

[3] The appellant contends that the city should be barred by laches from reliance on Section 14-104(13) because the city delayed its enforcement of this section of the zoning code from May 1, 1966, when the amortization period ended until 1979 when his application was filed with L & I. As we have noted, the appellant and Rose Sullivan deny receiving the January 17, 1966 letter stating that junkyard use should be discontinued by May 1, 1966.

The appellant's argument rests solely on the fact that there was a delay in the enforcement of Section 14-104(13) ; he has shown no harm and indeed as a result of the delay he had the advantage of more than thirteen years of junkyard use by reason of the city's inattention. "[M]ere delay in enforcement does not create a vested right to use property in violation of zoning regulations." *Lewis v. Lower Gwynedd Township Zoning Hearing Board*, 24 Pa. Commonwealth Ct. 574, 576, 357 A.2d 725, 726 (1976).

justment Certificate is obtained], excepting therefrom the following uses permitted in commercial districts subject to qualifications: [none of the exceptions are applicable to this case].

(2) For the purposes of this provision, uses conducted or maintained in the open air shall mean those uses conducted or maintained on land without buildings, or on land containing buildings which cover less than 25% of the area of said land [the building on the appellant's property covers 10.3% of the property].

(b) Every non-conforming use which is required to be discontinued under the provisions of (13)(a) above shall be registered with the Department of Licenses and Inspections within six months from the effective date of this ordinance or within six months from the effective date of any amendment to this Title which causes said use to become non-conforming;

. . . .

(c) Failure to discontinue a non-conforming use under the terms of this paragraph shall be a violation of this Title and subject to the penalties set forth in §14-113.

The appellant contends that Section 14-104(13) is unconstitutional. He does not, however, state what provisions of the United States or Pennsylvania Constitution Section 14-104(13) violates but we may assume that his attack is based upon Article I, Section 1 of the Pennsylvania Constitution and Section 1 of the 14th Amendment to the United States Constitution.

The issue of whether a zoning provision requiring the amortization and eventual discontinuance of nonconforming uses is a deprivation of property without

due process of law is one of first impression for the appellate courts in Pennsylvania.

Two courts of common pleas have dealt with the issue. In *Concord Township v. Cornogg,* 9 D. & C.2d 79 (1956), the Court of Common Pleas of Delaware County held that a zoning ordinance requiring that nonconforming signs be removed within six months was unconstitutional. A contrary conclusion was reached by the Court of Common Pleas of York County in *Ammon R. Smith Auto Co. Appeal,* 79 York 145 (1965). In *Smith,* the court upheld the constitutionality of an ordinance ordaining that all signs containing flashing and intermittent lights were nonconforming and subject to removal within three months on the basis that it was a reasonable use of the police power and not a deprivation of property contrary to the due process clause of the 14th Amendment. On appeal, the Supreme Court of Pennsylvania reversed on other grounds without deciding the constitutional issue. *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A.2d 683 (1966). The Supreme Court held that the ordinance was too general, broad and unreasonable because it prohibited signs containing flashing and intermittent lights from all zoned districts without regard to particular conditions existing in those districts. In dicta, however, the Supreme Court noted that "the right to limit, restrict or abolish the use of signs on one's own property, is based upon the police power when it is used to reasonably affect health or safety or morals, and is not arbitrary or discriminatory; in such circumstances it is paramount to the rights of every property owner." *Id.* at 496, 223 A.2d at 684.

A majority of state appellate courts which have considered the constitutionality of provisions for the amortization of nonconforming uses have held them

to be constitutional exertions of the police power so long as they are reasonable. The cases are collected at Annot., 22 A.L.R. 3d 1134 (1968). In the cases of *State v. Joyner,* 286 N.C. 366, 211 S.E. 2d 320, *appeal dismissed,* 422 U.S. 1002 (1975); *Board of Supervisors of Cerro Gordo County v. Miller,* 170 N.W.2d 358 (Iowa 1969); *Lachapelle v. Town of Goffstown,* 107 N.H. 485, 225 A.2d 624 (1967); *Village of Gurnee v. Miller,* 69 Ill. App. 2d 248, 215 N.E. 2d 829 (1966); *McKinney v. Riley,* 105 N.H. 249, 197 A.2d 218 (1964); *Town of Schroeppel v. Spector,* 43 Misc. 2d 290, 251 N.Y.S. 2d 233 (1963); *Harbison v. City of Buffalo,* 4 N.Y. 2d 553, 176 N.Y.S. 2d 598, 152 N.E. 2d 42 (1958), zoning regulations amortizing nonconforming junkyards over periods from one to five years were upheld.

The reasoning of courts upholding amortization is premised on the point that nonconforming uses are inconsistent with zoning's purpose of providing an orderly physical development of land use; that, in general, ordinances restricting future uses have been upheld as constitutional; and that amortization and removal is merely a form of restriction. In *City of Los Angeles v. Gage,* 127 Cal. App. 2d 442, 274 P.2d 34, 43-44 (1954), the District Court of Appeals of California upheld a zoning ordinance which required that a nonconforming commercial use be discontinued within five years of its passage and stated that:

> The distinction between an ordinance restricting future uses and one requiring the termination of present uses within a reasonable period of time is merely one of degree, and constitutionality depends on the relative importance to be given to the public gain and to the private loss. Zoning as it affects every piece of property is to some extent retroactive in that it applies to property already owned at the time

of the effective date of the ordinance. The elimination of existing uses within a reasonable time does not amount to a taking of property nor does it necessarily restrict the use of property so that it cannot be used for any reasonable purpose. Use of a reasonable amortization scheme provides an equitable means of reconciliation of the conflicting interests in satisfaction of due process requirements. As a method of eliminating existing nonconforming uses, it allows the owner of the nonconforming use, by affording an opportunity to make new plans, at least partially to offset any loss he might suffer. The loss he suffers, if any is spread out over a period of years, and he enjoys a monopolistic position by virtue of the zoning ordinance as long as he remains. If the amortization period is reasonable the loss to the owner may be small when compared with the benefit to the public. Nonconforming uses will eventually be eliminated. A legislative body may well conclude that the beneficial effect on the community of the eventual elimination of all nonconforming uses by a reasonable amortization plan more than offsets individual losses. (Citations omitted.)

See also *Grant v. Mayor and City Council of Baltimore*, 212 Md. 301, 129 A.2d 363 (1957).

We agree that the distinction between an ordinance restricting future uses and one requiring the termination of present uses within a reasonable period of time is merely one of degree; and there is support for this proposition in the Pennsylvania cases. The right to make necessary additions to an existing nonconforming use to provide for the natural expansion and accommodation of increased trade is constitutional.

*Silver v. Zoning Hearing Board of Adjustment,* 435 Pa. 99, 255 A.2d 506 (1969); *Gilfillan's Permit,* 291 Pa. 358, 140 A. 136 (1927); *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township,* 67 Pa. Commonwealth Ct. 183, 446 A.2d 716 (1982); *Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971). This protection, however, is not without limitation. In *Silver* at 103, 255 A.2d at 507, the court wrote that "[t]he contemplated expansion must not be detrimental to the public health, welfare and safety. We have never questioned the right of a municipality to impose reasonable restrictions on the expansion of a non-conforming use." *See also Jenkintown Towing Service.* Mr. Justice (later Chief Justice) BENJAMIN R. JONES in *Hanna v. Board of Adjustment,* 408 Pa. 306, 312-313, 183 A.2d 539, 543 (1962) wrote:

A basic purpose of zoning is to ensure an orderly physical development of the city . . . by confining particular use of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. *Molnar v. G. B. Henne & Company, Inc.,* 377 Pa. 571, 581, 105 A.2d 325. The continuance of nonconforming uses under zoning ordinance is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses, and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be

reduced to conformity as speedily as compatible with the law and the Constitution.

We believe that zoning provisions which require the amortization and elimination of nonconforming uses are not facially unconstitutional; and, that on the contrary, they represent a valid exercise of the police power so long as they are reasonable. Each case in this class must be determined on its own facts; and the answer to the question of whether the provision is reasonable must be decided by observing its impact upon the property under consideration. The true issue is that of whether, considering the nature of the present use, the length of the period for amortization, the present characteristics of and the foreseeable future prospects for development of the vicinage and other relevant facts and circumstances, the beneficial effects upon the community that would result from the discontinuance of the use can be seen to more than offset the losses to the affected landowner.

The facts and circumstances necessary for such a determination were not the subject of the zoning board hearing in this case; and no findings or conclusions relevant to the determination of constitutionality of Section 14-104(13) as it related to the appellant's property were made. We are constrained therefore to remand the record to the zoning board for hearing and decision of this issue not inconsistent with this opinion.

In summary, we hold that the appellant has demonstrated his entitlement to add to his nonconforming junkyard the proposed housing for the baler, if his use of the property as a junkyard has not been rendered unlawful by operation of Section 14-104(13) of the city's zoning code. We further hold that Section 14-104(13) is not facially an invalid exercise of the city's police powers, but is valid as applied in this case if it

is reasonable. It is reasonable if considering the nature of the present use, the length of the period for amortization, the present characteristics of and the foreseeable future prospects for development of the vicinage, and other relevant facts and circumstances, the beneficial effects upon the community that would result from the discontinuance of the use of the lot as a junkyard can be seen to more than offset the appellant's losses. We must remand for the determinations just mentioned.

Order reversed; record remanded; jurisdiction relinquished.

### Order

And Now, this 14th day of June, 1984, the order of the Court of Common Pleas of Philadelphia County is reversed; the record is remanded for proceedings and disposition by the Philadelphia Zoning Board of Adjustment, not inconsistent with this opinion. Jurisdiction is relinquished.