555 A.2d 1368

PA Northwestern Distributors, Inc., Appellant *v.* The Zoning Hearing Board of The Township of Moon, Appellee.

Argued February 6, 1989, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Howard N. Stark,* with him, *William G. Sherr, Stark and Sherr,* for appellant.

*Charles M. Means, Markel, Schafer & Means, P.C.,* for appellee, The Zoning Hearing Board of the Township of Moon.

*Robert E. Durrant, Meyer, Darragh, Buckler, Bebenek & Eck,* for appellee, The Township of Moon.

OPINION BY SENIOR JUDGE NARICK, March 16, 1989:

This zoning case involves an appeal by Pennsylvania Northwestern Distributors, Inc. (Appellant) from a decision of the Court of Common Pleas of Allegheny County which affirmed a decision of the Zoning Hearing Board (Board) of the Township of Moon (Township). We affirm.

The subject of the instant litigation is Ordinance No. 243 (Ordinance) which was passed by the Township on May 23, 1985. This Ordinance amended the existing zoning regulations (Township Ordinance No. 193) by establishing locational regulations applicable to "adult" businesses.[1] The Ordinance required such businesses to be located within C-2 (commercial) Districts. The Ordinance further restricted the location of these establishments to not within 1000 feet of any residential district nor within 500 feet of a pre-existing school, hospital, nursing home, group care facility, park, church, establishment engaged in the sale of alcoholic beverages or other adult entertainment establishments. All nonconforming uses were subject to a ninety day amortization provision in the Ordinance.

Appellant is the lessee of certain property located on Beers School Road in the Township and owned by Bernard Bercik.[2] In November 1984, Mr. Bercik filed an application for certification of use and occupancy of the property in question. The application indicated that the nature and character of the proposed use of the property was "RETAIL SALES/GIFT AND VARIETY". A permit

---

[1] The "adult" businesses regulated by the Ordinance included any establishment offering for sale any book, publication, file or medium depicting nudity or sexual conduct or any movie theater which on a regular continuing basis showed "X" rated films.

[2] Beers School Road is adjacent to the Greater Pittsburgh International Airport and is characterized by hotels, motels, restaurants, shopping centers, automobile dealerships, auto rental lots, gas stations, parking lot as well as other commercial establishments.

was subsequently issued by the Township. On November 16, 1984, Mr. Bercik entered into a lease with Appellant. The initial term of the lease was thirty-six months but the lease had two renewal options which could extend the lease to December 31, 1994. Also, the lease was contingent upon Appellant being able to obtain any and all licenses from governmental authorities necessary for use and occupancy of the premises (including that necessary for operation as an "adult" bookstore). On May 4, 1985, Appellant opened an "adult" bookstore on the property in question.

The record reveals that Appellant's business is located next to a school and is closer to a church and residential district than permitted by the Ordinance. For this reason, Appellant filed a challenge to the substantive validity of the Ordinance with the Board pursuant to Section 1004(1)(a) of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §11004(1)(a). A hearing was held and the Board determined that the Ordinance including the ninety day amortization provision was valid. The trial court affirmed; hence, this appeal.

Appellant's argument on appeal is that the Ordinance's zoning regulations in effect exclude all "adult" business establishments from the Township. Appellant further challenges the Ordinance's ninety day amortization provision as unconstitutional. We will address the issues raised by Appellant keeping in mind that when reviewing a zoning appeal where the trial court has taken no additional evidence, we are limited to determining whether the Board committed a manifest abuse of discretion or an error of law. The Board has abused its discretion only if its findings are not supported by substantial evidence. *Salisbury Township Appeal*, 114 Pa. Commonwealth Ct. 493, 539 A.2d 48 (1988).

Zoning classifications are to a great extent within the judgment of the legislative body and this judgment will only be disturbed when it is obvious that the classification bears no substantial relationship to the public health, safety, morals or general welfare. *Layne v. Zoning Board of Adjustment*, 501 Pa. 224, 460 A.2d 1088 (1983). Moreover, there is a presumption that a zoning ordinance is valid and that the municipal body enacting the legislation did so for the purpose of serving the public welfare. *Layne.* The burden is on the party attacking the constitutional validity of the ordinance to establish that the ordinance is unconstitutional. *Layne.*

Appellant's first argument is that the Ordinance is exclusionary *per se* and if upheld the effect will be to exclude Appellant's business and similar "adult" business establishments from operating within the Township. The mere fact that "adult" businesses such as the one herein are not free to operate within certain distances of schools, residences, churches, nursing homes, etc. does not mean that the zoning classification is exclusionary *per se.* In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), *reh'g denied*, 429 U.S. 873 (1976), the owner of two "adult" movie theaters challenged an amendment to the City of Detroit's "Anti-Skid Row Ordinance" which restricted "adult" movie theaters from locating within 500 feet of a residential area or within 1000 feet of any other regulated uses.[3] In upholding the validity of the ordinance, the high court wrote:

> [W]e have no doubt that the municipality may control the location of theaters as well as the

---

[3] The regulated uses referred to in the ordinance included "adult" book stores and theaters, cabarets, establishments engaged in the sale of alcoholic beverages, taxi dance halls, hotels, motels, pool halls, public lodging houses, secondhand stores, and shoe shine parlors.

location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

*Young v. American Mini Theatres, Inc.*, 427 U.S. at 62.

The Supreme Court in *Young v. American Mini Theatres, Inc.* went on to say that "Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures." *Young v. American Mini Theatres, Inc.*, 427 U.S. at 70-71.

In *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the Supreme Court again upheld an ordinance which prohibited "adult" motion picture theaters from locating within 1000 feet of any residential zone, church, park or school. In both *Young v. American Mini Theatres, Inc.* and *Renton* the Supreme Court indicated that in considering the constitutionality of an ordinance, the appropriate inquiry is whether the ordinance is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication. Thus, we will continue our analysis as to the exclusionary effects of the ordinance herein with this question in mind.

In *Kacar, Inc. v. Zoning Hearing Board*, 60 Pa. Commonwealth Ct. 582, 432 A.2d 310 (1981), an ordinance of the City of Allentown restricted "adult" bookstores and movie theaters from locating within 500 feet of any school, church or residential zone except by way of special exception. The appellant therein, desiring to op-

erate an "adult" bookstore and theater in the city, was denied a special exception under the ordinance. On appeal, the ordinance was attacked as being, *inter alia*, exclusionary and violative of the principles set forth in *Young v. American Mini Theatres, Inc.* The Commonwealth Court rejected this argument noting that if the city had adopted an ordinance which regulated the "showing" of sexually explicit movies rather than the "location" of such establishments this Court would have no choice but to conclude that the government interest was related to the suppression of free expression. *Kacar, Inc.*, 60 Pa. Commonwealth Ct. at 592, 432 A.2d at 315. However, in *Kacar, Inc.*, this Court held that there was a legitimate and substantial government interest behind the zoning classification because the purpose of the ordinance's locational restrictions was to protect residential and business neighborhoods from deterioration with only minimal infringements upon constitutional guarantees. *Kacar, Inc.*, 60 Pa. Commonwealth Ct. at 592-93, 432 A.2d at 315-16.[4]

In the matter herein, Appellant's business which is the only establishment of its kind in the Township is in violation of the Ordinance because it is not only located next to a school, but also is located closer to a church and residential district than permitted by the Ordinance. Clearly, the Township has a substantial and legitimate

---

[4] This Allentown ordinance was subject to additional litigation in *Commonwealth v. Howells*, 66 Pa. Commonwealth Ct. 647, 445 A.2d 875 (1982). *Also see Visual-Education Devices, Inc. v. Springettsbury Township*, 54 Pa. Commonwealth Ct. 529, 422 A.2d 235 (1980) where this Court citing *Young v. American Mini Theatres, Inc.* expressed approval of the constitutionality of a subsequent amendatory ordinance. However, in *Visual-Ed.*, the use and occupancy permit of the operator of an "adult" business establishment was revoked on the ground that false statements and misrepresentations were made in the application for use and occupancy and this was the basis for denial of relief on appeal.

interest here in enacting an ordinance regulating the *location* of "adult" establishments.[5]

As to whether the Ordinance allows for reasonable alternatives for communication, Appellant had the burden of proving that there were no locations within the Township from which it could do business.[6] Appellant did not meet this burden. Instead, the parties stipulated before the Board and the Board accepted as fact that there were areas within the Township where Appellant's business could locate but these areas were either already occupied or were less desirable from a commercial standpoint. The fact that the Ordinance now precludes Appellant from operating from the most commercially feasible location does not require a conclusion that the Ordinance is exclusionary. As our Supreme Court stated in *Renton*, 475 U.S. at    , 106 S.Ct. at 932:

---

[5] The Board of Supervisors in enacting the Ordinance indicated that the reason for such regulations was that without regulation such establishments "(1) Tend to attract vagrants; (2) Tend to attract children, especially those in their teenage years; (3) Tend to cause those who traffic in obscene material, those who operate on the edge of law, and those who operate clearly outside of the law to congregate or operate in the community; (4) Tend to impose a law enforcement cost on the community proportionately higher than other types of commercial establishments ... ; (5) Tend to attract similar commercial enterprises to the vicinity of their location, thus heightening the potential adverse impact of such establishments; (6) Tend to reduce the value and enjoyment of nearby property, both residential and commercial; (7) Tend to foster an environment not in keeping with other permitted and regulated uses such as residential use, ... group care facilities, hospitals, out-patient clinics, nursing homes, mobile home parks, schools, ... recreational parks, churches, etc.; (8) If located unreasonably close to other "adult" bookstores, adult theaters, massage parlors, or establishments serving liquor, beer or other alcoholic beverages, tend to create, extend or aggravate blighted areas; and (9) Tend to degrade the sanctity of individuals and families in the community."

[6] Unlike *Kacar, Inc.*, the Ordinance herein attempts to restrict an *already existing* use.

That respondents [landowners] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have 'the effect of suppressing, or greatly restricting access to, lawful speech,' ... we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. (Citations omitted.)

Next, we must address the Ordinance's ninety day amortization provision. In *Sullivan v. Zoning Board of Adjustment*, 83 Pa. Commonwealth Ct. 228, 478 A.2d 912 (1984), this Court had occasion to address the constitutionality of amortization provisions in zoning ordinances. In that case, Judge ROGERS writing for the Court stated:

We believe that zoning provisions which require the *amortization and elimination of nonconforming uses are not facially unconstitutional*; and, that on the contrary, they represent a valid exercise of the police power so long as they are reasonable. Each case in this class must be determined on its own facts; and the answer to the question of whether the provision is reasonable must be decided by observing its impact upon the property under consideration. The true issue is that of whether, considering the nature of the present use, the length of the period for amortization, the present characteristics of and the foreseeable future prospects for development of the vicinage

and other relevant facts and circumstances, the beneficial effects upon the community that would result from the discontinuance of the use can be seen to more than offset the losses to the affected landowner. (Emphasis added.)

*Sullivan,* 83 Pa. Commonwealth Ct. at 247, 478 A.2d at 920.

In *Sullivan,* the Court further noted that the majority of state appellate courts have held provisions for the amortization of nonconforming uses in zoning ordinances to be constitutional exertions of police power so long as they are reasonable. *Sullivan,* 83 Pa. Commonwealth Ct. at 243-44, 478 A.2d at 919.[7]

Thus, we must take our analysis one step further and determine whether the ninety day amortization provision herein is reasonable. The reasonableness of an ordinance's amortization provision must be determined on a case-by-case basis; and a consideration to *each* non-conforming use must be given. *See Sullivan.* Appellant, as challenger of the ordinance's amortization provision bears the burden of proving its unreasonableness.

This Court has not yet specifically addressed the reasonableness of amortization provisions. Therefore, we have looked to other jurisdictions for guidance. In *Northend Cinema, Inc. v. City of Seattle,* 90 Wash. 2d 709, 585 P.2d 1153 (1978), *cert. denied, Apple Theater, Inc. v. City of Seattle,* 441 U.S. 945 (1979), a Seattle zoning ordinance required all "adult" motion picture theaters to be located in certain downtown areas and that all nonconforming uses be terminated within ninety days. The Supreme Court of Washington in upholding the ninety

[7] For a collection of cases addressing the constitutional validity of provisions for amortization of nonconforming uses, Annotation, *Validity of Provisions for Amortization of Nonconforming Uses,* 22 A.L.R. 3rd 1134 (1968 and Supp. 1988).

day amortization provision reasoned that appellant was not obligated under its lease to show adult films and all monies expended on improvements to the building or necessary equipment had either been recovered through depreciation or were contemplated to be left as property of the lessor. Based upon this, the court concluded that the appellant therein had failed to come forward with clear evidence of economic harm.[8]

In determining the reasonableness of the amortization provision herein, it must be asked whether Appellant has been allowed a reasonable time to recover his investment or the value of the use of his property. It must also be determined whether the benefit to the public outweighs the loss that will be suffered by Appellant (the private party). *Sullivan.*[9]

In the matter herein, the parties stipulated that Appellant's inventory consists of reading material and paraphernalia relating to sexual activities and that most of the materials consisted of soft covered books and magazines. Testimony of record further established that a large portion of the inventory consisted of monthly publications. Thus, most of Appellant's inventory would be out of date and unusable within one month.[10]

In support of its position that it would suffer economic loss, Appellant submitted an itemization of expenses totalling $91,479.91. These expenses were allegedly incurred during the period January 1985 through March

---

[8] *Also see Hart Bookstores, Inc. v. Edmisten,* 612 F.2d 821 (1979), *cert. denied,* 447 U.S. 929 (1980) where an ordinance that prohibited a single building containing an "adult" business to contain a second "adult" business and for a six month amortization period was upheld.

[9] *Also see* Ryan, Pennsylvania Zoning Law and Practice, Section 7.3.4 (Supp. 1986).

[10] Appellant submitted no evidence to support a contrary conclusion.

31, 1986. The Board rejected this evidence because the expenses were incurred after the enactment of the Ordinance and were therefore incurred at Appellant's own risk. We agree. Furthermore, we do not believe the litigation expenses claimed by Appellant totalling approximately $55,000 can be properly considered herein. *Cf. Olan Mills, Inc. v. Sharon,* 371 Pa. 609, 92 A.2d 222 (1952). The remaining expenses allegedly incurred by Appellant total approximately $16,000.00 and relate to the cost of booths, displays, shelves, cash registers, keys and locks, and light fixtures. The record reveals that the property in question is located in a commercially viable district and Appellant presented no evidence that these items could not be used by another commercial entity. Appellant also indicated it had expended approximately $2600 on a sign which it displayed outside the business. There is no evidence that this sign could not be reused at another business location. Lastly, the remaining costs incurred by Appellant relate to permits, licenses, utilities, rent, insurance, salaries, and training of employees. We consider these expenses to be costs of doing business which it has been able to recoup during the period of time it has remained in business.

Lastly, as to the terms of the lease, it was specifically provided in the lease that it was contingent upon the lessee's ability to obtain all necessary governmental licenses. Therefore, because Appellant is unable to secure the necessary approval from government authorities, it may terminate the lease without incurring liability for such termination.[11]

---

[11] Also, the lease does not limit Appellant to operation as an "adult" bookstore. Rather, the lease provides that the premises may be used for the operation of a retail sales store and vending machines with the exception that the premises could not be used for video games as an arcade.

Due to the above, we agree with the Board and the trial court that Appellant has failed to prove that the ninety day amortization provision of the Ordinance is unreasonable.[12] Moreover, litigation in this matter commenced in 1985 and Appellant has continued to operate its business on the property in question. Thus, much more than ninety days has elapsed and Appellant has had more than ample time to prepare for the possibility of having to terminate its business.

Accordingly, for the reasons set forth herein, we will affirm the trial court.

ORDER

AND NOW, this 16th day of March, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

[12] We should note that Appellant in support of its position relies on *People Tags, Inc. v. Jackson County Legislature*, 636 F. Supp. 1345 (W.D. Mo. 1986) and *Purple Onion, Inc. v. Jackson*, 511 F. Supp. 1207 (N.D. Ga. 1981). In *People Tags* an amortization provision was struck down as violative of the Missouri Constitution. Thus, unlike Pennsylvania, the Missouri courts have found amortization provisions unconstitutional. In *Purple Onion*, the appellant therein presented testimony that proposed alternate sites for adult businesses were in fact impossible. Appellant herein stipulated that there were other areas where Appellant could locate but those areas which were available were less desirable from a commercial standpoint.