IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
                                  :
            v.                    :
                                  :
Charles E. Eckenrode,             :      No. 673 C.D. 2015
                  Appellant       :      Argued:  November 16, 2015

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                        FILED:  January 29, 2016

        Charles E. Eckenrode (Eckenrode) appeals from an April 7, 2015,
order (Order) of the Court of Common Pleas of Allegheny County (Trial Court)
which adjudicated Eckenrode guilty and assessed fines against Eckenrode totaling
$15,000 plus costs.[1]

## FACTS

        Eckenrode owns a home at 343 Lawn Street in the Oakland section of
the City of Pittsburgh, which he leases to tenants.  This dwelling is the subject of
the current controversy.  The dwelling was zoned as a single family residence.
Hearing Transcript, (N.T.) November 18, 2014, at 92, 106-107; see also Opinion at
2, Reproduced Record (R.R.) at 220a.  A certificate of occupancy was not required
if a dwelling is used as a single family residence.  Under Title 9, Section 926.72 of

---

[1] After a timely appeal by Eckenrode to this Court, the Trial Court issued its June 24, 2015
opinion (Opinion) in support of its Order.  That Opinion affirmed the decision of the Magisterial
District Judge (MDJ) which found Eckenrode guilty of violations of the Zoning Code of the City
of Pittsburgh (Zoning Code) and the Building Code of the City of Pittsburgh (Building Code).

the Zoning Code (Section 926), a family was defined as "[a] group of *not* more than three (3) persons who need not be related by blood or marriage or adoption." (Emphasis added.) Zoning Code, Title 9, Section 926.72, R.R. at 302a. When the use of the dwelling changes, the Zoning Code required the owner of the dwelling to file an application for a certificate of occupancy. See Zoning Code, Title 9, Sections 922.02.A(2), 922.02.D(2), R.R. 304a.[2] It was undisputed that six (6) unrelated persons resided in Eckenrode's dwelling. N.T. at 18-19, 27.

Subsequently, the City of Pittsburgh notified Eckenrode that there was a changed-use to the dwelling in issue and directed Eckenrode to apply for a certificate of occupancy because of that change in use. Private Criminal Complaint, Commonwealth of Pennsylvania, Allegheny County, Commonwealth v. Charles E. Eckenrode (Private Criminal Complaint); see also R.R. at 299a-300a. Eckenrode failed to comply and was charged. A hearing was held on November 18, 2014, and thereafter Eckenrode was found guilty by the Trial Court on April 7, 2015. April 7, 2015 Order. See also, R.R. at 2a. This appeal followed.[3]

---

[2] Title 9, Section 922.02.A(2) of the Zoning Code states in pertinent part that "[a] Certificate of Occupancy shall be required for the lawful use or occupancy of all land, structures or premises, or parts thereof, in all of the following circumstances …[such as] … [a] new or changed use of land or new or changed use of structure." Zoning Code, Title 9, Section 922.02.A(2).

Title 9, Section 922.02.D(2) of the Zoning Code states in pertinent part that "[a]n application for a Certificate of Occupancy shall be submitted ... [at] the time of a change in use of land or structure." Zoning Code, Title 9, Section 922.02.D(2).

[3] This Court's scope of review of the trial court's determination on appeal from a summary conviction is limited to whether there has been an error of law or whether competent evidence supports the trial court's findings. Commonwealth v. Hall, 692 A.2d 283 (Pa. Cmwlth. 1997); see also Commonwealth v. Nicely, 988 A.2d 799 (Pa. Cmwlth 2010). When the constitutionality of a zoning ordinance is challenged, there is a presumption that the ordinance is valid and the party challenging its validity has a heavy burden to prove that it is unconstitutional. Farley v. Zoning Hearing Board of Lower Merion Township, 636 A.2d 1232, 1236 (Pa. Cmwlth. 1994).

## ISSUES

On appeal to this Court, Eckenrode argues that: the Trial Court erred in convicting Eckenrode of violating Title 9, Section 922.02, of the Zoning Code because there was no requirement under the Zoning Code to apply for an occupancy permit for a single family dwelling in the City of Pittsburgh; Eckenrode was convicted under a non-existent section of the Zoning Code;[4] and that Eckenrode's conviction (of a violation of Section 926) violated the equal protection and due process provisions of the Fourteenth Amendment of the United States Constitution (14th Amendment) as being clearly arbitrary and unreasonable and having no substantial relation to the public health, safety, morals or general welfare.

It is well-established that zoning legislation is economic and social legislation. See Village of Belle Terre v. Boraas, 416 U.S. 1 (1974). An ordinance is valid if it promotes public health, safety, or welfare and its provisions are rationally-related to the purpose it is to serve.[5]  Layne v. Zoning Board of

---

[4] The non-existent Zoning Code section cited in the current controversy is ostensibly Title 10, Section 111.1 of the Zoning Code.

[5] Equal protection challenges are reviewed by the United States Supreme Court under strict scrutiny, intermediate scrutiny and a rational basis scrutiny. See e.g., Rogin v. Bensalem Township, 616 F. 2d 680 (3rd Cir., 1980). Under a strict scrutiny challenge, the test is whether the challenged classification is necessary to accomplish a compelling state interest and is reserved for discriminations based on race, national origin, alienage, and for classifications made on account of the exercise of a constitutional right by one of the two classes. Rogin v. Bensalem Township, 616 F.2d at 687 n. 29.

Under an intermediate scrutiny, the test is whether the discrimination substantially furthers the achievement of an important governmental objective. The application of an intermediate scrutiny has thus far only been applied to classifications based on gender or illegitimacy. Rogin v. Bensalem Township, 616 F.2d at 687 n. 29.

However, under a rational basis scrutiny, the United States Supreme Court has accorded great deference to the legislative decision to establish the challenged classification when it affects business or other economic activity. See Vance v. Bradley, 440 U.S. 93 (1979). In

**(Footnote continued on next page…)**

3

Adjustment of Pittsburgh, 460 A.2d 1088 (Pa. 1983); see Muscarella v. Commonwealth, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). The lack of any rational relationship to a legitimate governmental purpose must be obvious, Layne, 460 A.2d at 1088, and if validity of the zoning ordinance provision is debatable, the zoning provision must be upheld. Lynch Community Homes, Inc. Appeal, 554 A.2d 155 (Pa.Cmwlth. 1989).

The issues of whether Eckenrode failed to apply for an occupancy permit for a single family dwelling in Pittsburgh; whether Eckenrode was convicted under a non-existent section of the Zoning Code; and whether Eckenrode's conviction under Section 926 violated the equal protection and due process provisions of the 14th Amendment as being clearly arbitrary and unreasonable and having no substantial relation to the public health, safety, morals or general welfare were raised and argued before the Trial Court and ably disposed of in the comprehensive and well-reasoned opinion of the Honorable Robert C. Gallo, S.J. of the Court of Common Pleas of Allegheny County.

---

**(continued…)**

Vance, the Court held that "we will not overturn such a statute [affecting an economic activity] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Vance v. Bradley, 44 U.S. at 97.

In recent years, the United States Supreme Court has rejected a supervisory role in due process as applicable to zoning laws and now applies "virtually the same standard" of review under the due process clause as it does in equal protection cases involving economic classifications. Rogin v. Bensalem Township, 616 F.2d at 689 (citations omitted). "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction and that it might be thought that the particular legislative measure was a rational way to correct it." Williamson v. Lee Optical Co., 348 U.S. 483, 487-88 (1955).

Therefore, this Court shall affirm the Trial Court's Order of April 27, 2015 based upon Senior Judge Gallo's June 24, 2015, Opinion in support of his April 27, 2015 Order.  Commonwealth of Pennsylvania v. Charles E. Eckenrode, Criminal Division No. CL/SA 2060-14, filed June 24, 2015.


_____
BERNARD L. McGINLEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
           :
     v.      :
           :
Charles E. Eckenrode,   :  No. 673 C.D. 2015
     Appellant  :

## **O R D E R**

AND NOW, this 29th day of January, 2016, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
SUMMARY APPEALS DIVISION

Commonwealth of Pennsylvania

v.

Charles E. Eckenrode

Criminal Division

No. CL/SA 2060-14

***ORDER OF COURT***

Filed by:

**Robert C. Gallo, S.J.**
Summary Appeals

821 City-County Building
414 Grant Street
Pittsburgh, PA 15219

(412) 350-3831

FILED
2014 SEP 27 PH 3: 35
DEPT OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

Copies to:

Kenneth J. Yarsky II, Esquire
535 Smithfield Street
Suite 300
Pittsburgh, PA 15222

Celia J. Liss, Esquire
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

# ORIGINAL



# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## SUMMARY APPEALS DIVISION

Commonwealth of Pennsylvania

Criminal Division

v.

No. CL/SA 2060-14

Charles E. Eckenrode

GALLO, S.J.

## ORDER OF COURT

In accordance with Rule 1925 (b) of the Pennsylvania Rules of Appellate Procedures, it is hereby ORDERED that Appellant file of record and serve on the Court a Concise Statement of the Matters Complained of on the Appeal no later than 21 days after entry of this Order.

A copy of your Concise Statement of the Matters Complained of on the Appeal **MUST** also be filed with our Chambers at 821 City-County Building and with the Department of Court Records - Criminal Division at Room 114 of the Courthouse. A copy should also be served with the appropriate Borough or City Solicitor.

Appellant is notified, pursuant to Rule 1925(b)(2) of the Pennsylvania Rules of Appellate Procedure, that any issue not properly included in the Statement timely filed and served, pursuant to the Rule, shall be considered waived for purposes of appeal. Furthermore, failure to file a 1925 (b) Statement will result in a waiver of any appellate claims.

By the Court:

_____, S.J.

Dated: April 27, 2015

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## SUMMARY APPEALS DIVISION

Commonwealth of Pennsylvania

    v.

Charles E. Eckenrode,

    Defendant

CRIMINAL DIVISION

No. CL/SA 2060-14

## *OPINION*

Filed by:

Robert C. Gallo, S. J.
Summary Appeals

821 City County Building
414 Grant Street
Pittsburgh, PA 15219

(412) 350-3831

Date: June 24, 2015

FILED

2015 JUN 25 AM 11: 25

DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

ORIGINAL

(12)

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## SUMMARY APPEALS DIVISION

Commonwealth of Pennsylvania

    v.

Charles E. Eckenrode,

        Defendant

GALLO, S.J.

CRIMINAL DIVISION

No. CL/SA 2060 -14

## OPINION

Defendant, Charles E. Eckenrode, filed a Summary Appeal from a private criminal complaint alleging three violations of the Pittsburgh Code of Ordinances. The Complaint charged Defendant with violating: (1) Title 10, Section 111.1 for failure to apply for a certificate of occupancy for a changed use; (2) Title 9, Section 922.02 for failure to secure a certificate of occupancy for the period prior to June 5, 2014; and (3) Title 9, Section 926.76 (b) for more than 3 unrelated persons residing in a dwelling zoned as "single family."

A *de novo* hearing on Defendant's summary appeal took place on November 18, 2014, followed by legal argument by counsel on January 23, 2015. On April 7, 2015, after the Court announced its finding of guilt, the City presented the testimony of 2 witnesses to show the impact of the violations on the community for the Court's consideration in determining the penalty to be imposed. The Court then entered an Order finding Defendant guilty of the 3 Code violations as charged and imposed a total fine in the amount of $15,000.00 plus costs. Defendant filed a timely Notice of Appeal to the Commonwealth Court of Pennsylvania from the Court's Order of April 7, 2015.

Defendant owns a home at 343 Lawn Street in the Oakland section of the City of Pittsburgh (hereinafter "City") which he leases to tenants. This dwelling is the subject of the within matter. It is zoned as single family residence. (Hearing Transcript, 11/18/14, (hereinafter "H.T.") pp. 92, 106-107).

The Pittsburgh zoning Code defines "dwelling unit" as a building or portion thereof designed and used for residential occupancy by a single family and that includes exclusive sleeping, cooking, eating and sanitation facilities. Title 9, Section 926.72.

The Pittsburgh Zoning Code defines "family" as "an individual, or two or more persons related by blood, or marriage or adoption, living together in a dwelling unit," or "a group of not more than 3 persons who need not be related by blood or marriage or adoption, living together as a single housekeeping unit in a dwelling unit, and shared common facilities as considered reasonably appropriate for a family ...." Pittsburgh Code of Ordinances, Title 9, Sections 926.76(a) and (b).

A Certificate of Occupancy is not required when a dwelling unit is used as a single family residence. When the *use* of the structure is changed, however, the City Code of Ordinances requires that an application for a Certificate of Occupancy be submitted at the time of the change in use of the structure. Title 9 Sections 922.02.A(2) and 922.02.D(2).

At the *de novo* hearing, Robert McPherson, a building inspector for the City, testified that he received a mayor's service center complaint dated March 26, 2014, which stated that there were 6 unrelated people living in the subject property. (H.T. p.92). He received similar information at a meeting of the Oakland Planning

and Development Corporation, a community based group, and met with University of Pittsburgh Police Officer, Steve Cetra, who provided him with relevant information regarding occupancy of the subject property. (H.T. pp 93, 101). On April 15, 2014, Mr. McPherson went to the home but was unable to gain entry and had no contact with any occupant.

On May 6, 2014, Mr. McPherson sent a notice to Defendant informing him that he was in violation of the Pittsburgh Zoning Ordinance Section 926.76 (b) which defines a single family dwelling as one in which occupancy does not exceed 3 unrelated people. The notice further advised Defendant that use of the property now requires an Occupancy Permit due to its changed use. It further advised Defendant that once the permit was applied for, an inspection would be made for compliance to the Zoning and Building Codes. (H.T. p.100, City Exh.5). The notice directed Defendant to apply for the occupancy Permit within 30 days. (H.T. p. 106; City Exh. 5). No such application was made.

Mr. McPherson returned to the subject property on August 25, 2014, and again did not gain entry to the house. (H.T. p.94). He did, however, take a photograph of the mailbox of the house which listed 6 names. (H.T. p.94; City

Exh.4).

Brittany Burkhouse testified that she lived at the subject property from August 1, 2013 through the end of April, 2014. (H.T. pp. 18-19). She stated that 5 other tenants lived there during that time and that she had no familial relationship to any of the other tenants.(H.T. p.19-20, 27). She never signed a lease for the premises, but paid her monthly rent in the amount of $400.00 to the landlord, "Chuck," whom she identified as the Defendant herein. . (H.T.pp. 24-25, 29-30). In the spring of 2014, Ms. Burkhouse wanted to study abroad and placed an internet advertisement to sublet her room at the subject property on the University of Pittsburgh off campus housing website where she stated that 6 girls currently lived there. (H.T. pp. 23, 26-27; City Exh. 1).

All 5 of the young women identified by Ms. Burkhouse as her housemates testified that they resided at the subject property from August, 2013 through August, 2014. (H.T. pp.32, 48, 56-57, 62, 68-69). Three of the women testified that they signed a lease for the premises. (H.T. pp. 33, 47, 68-69).

Mallory McGuire lived at the subject premises from August, 2013 through August, 2014, and was residing there at the time of the *de novo* hearing. She testified that she did not sign a lease but did sign a "cover page." (H.T. p.57, City Exh. 2) She testified that Defendant explained to her that only 3 names were permitted to be on the lease and that the purpose of the cover page was to hold those tenants who didn't sign the lease liable for rent. (H.T. p.58). Defendant presented the cover page to her and she returned it to him. (H.T.p.58).

Sarah Cunningham also lived at the subject property from August, 2013 through August, 2014. (H.T. 48).She signed the lease and the cover page and paid her monthly rent with a check mailed to Defendant with the 5 other housemates' checks. (H.T. pp.48-49). She explained that she signed the cover page as well as the lease in order "to make sure that all of the roommates paid, even the ones who weren't the three that signed the lease originally." (H.T p.49) She explained that "Chuck said we couldn't have more than 3 on the lease." (H.T. p.49).

Gary Pepper, Senior Vice President of Eureka Bank, testified that the Bank records show that Defendant's account at Eureka Bank received checks or cash deposits from August, 2013 through March, 2014 from the 6 tenants who resided

at the subject property from August, 2013 through March, 2014. Defendant changed banks after March, 2014. H.T. 83-84, City Exh.3).

The uncontroverted evidence presented at the hearing on Defendant's Summary Appeal clearly shows that Defendant changed the use of the single family dwelling unit which was zoned residential. Five women testified that they were tenants who occupied the subject premises from August, 2013 through August, 2014 and one woman testified that she she occupied the premises from August, 2013 through April, 2014. Defendant failed to apply for a Certificate of Occupancy and failed to secure a Certificate of Occupancy as required by the Code. He collected rent from 6 unrelated women for at least a year in direct violation of the Code's requirement that not more than 3 unrelated persons may live in a dwelling unit zoned for "single family" occupancy. Although Defendant caused only 3 tenants to sign a lease in order to maintain the status of the structure as a single family dwelling, this was a mere ploy to avoid applying for the Certificate of Occupancy required by the Code.

In his Statement of Matters Complained of on Appeal, Defendant first argues that the Court erred in finding Defendant guilty of violating Title 9, Section

922.02 for failure to apply for an Occupancy Permit because no such permit is required for a single family dwelling. This is a circuitous argument. Defendant is correct that no Occupancy Permit is required for a single family dwelling in Pittsburgh. The subject property, however, was not a single family dwelling at the relevant time. As discussed *supra.*, Defendant changed the use of the structure by causing it to be occupied by more than 3 unrelated individuals at which time an application for an Occupancy Permit was required. Defendant failed to apply for the Permit.

Defendant next argues that the Court erred in finding Defendant guilty of violating Title 10, Section 111.1 of the City Code of Ordinances as charged in count one of the private criminal complaint because (1) there is no such section in the Code of Ordinances and (2) if the Commonwealth intended to cite Defendant for violating Title 10, Chapter 1002, Section 110.2 for failure to secure an Occupancy Permit, no such permit was necessary because an Occupancy Permit is not necessary for a single family dwelling.

The private criminal complaint filed by the City charged Defendant:

Failure to apply for a certificate of occupancy pursuant to an order of the Bureau of Building Inspection for Multi family dwelling at 343 Lawn St.prior

to 06/05/14 in violation of the Pittsburgh Building Code Title 10, International Building Code Section 111.1. Private Criminal Complaint, Commonwealth v. Charles Eckenrode, NT471-14.

Pa.R.Crim.P. 504 (6)(b) requires that a private criminal complaint in a summary case must contain a "citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged." Pa.R.Crim.P. 504(b)(6).

The problem with the City's Complaint is that the citations to the local ordinance and International Building Code are confusing. The short title of Title 10 of the Pittsburgh Code of Ordinances is "Building Title." (Pittsburgh Code of Ordinances, Title 10, Section 1001.02). Title 10 of the Pittsburgh Code of Ordinances adopts the International Building Code in Section 1002.01. Section 1002.01 of Title 10 states that the "Provisions of this Code shall apply to ...use and occupancy." Title 10 does not contain a Section 111.1 nor does it contain any reference to "occupancy permits." The relevant provision is found in the International Building Code in Chapter One at Section 111, entitled "Certificate of Occupancy."

The purpose of the requirements set forth in Pa.R.Crim.P. Rule 504(6)(b) is to provide the defendant with fair notice of the offense of which he is accused and to "properly defend and protect himself from further prosecution of the same offense, and enable the trial court to determine the sufficiency of the prosecution's case to support a conviction. *Commonwealth v. Nicely*, 988 A.2d 799, 806-807, (Pa.Cmwlth. 2010) citing *Commonwealth v. Borriello*, 696 A.2d 1215 (Pa.Cmwlth.1997).

Not all defects in a private criminal complaint result in dismissal of the complaint. Pa.R.Crim.P. 109 provides:

### Rule 109. Defects in Form, Content, or Procedure

A defendant shll not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation... unless the defendant raises the defect before the conclusion of the trial in a summary case... *and the defect is prejudicial to the rights of the defendant.* (emphasis supplied).

Prior to filing the private criminal complaint, the City sent a Notice to Defendant dated May 6, 2014, which clearly stated that the use of the dwelling had changed to a multi family dwelling and that an Occupancy Permit was required. The Code sections specifically cited were: "The Pittsburgh Code of Ordinances Title 10, Section 111.1; International Building Code, Chapter 1002;

and/or the Zoning Code, Title 9 Section 922.02A". Defendant was directed to apply for a Certificate of Occupancy within 30 days. He was further directed to cease operations until the necessary permit was secured. (City Exh. 5)

The Notice provided Defendant with sufficient information regarding the charges against him and gave him the opportunity to apply for an Occupancy Permit, change the use of the subject property to conform with the Pittsburgh Code of Ordinances and the International Building Code or to cease operations. Defendant failed to take any action whatsoever as directed in the Notice in order to avoid the charges against him. Together, the Notice and the private criminal complaint gave Defendant notice of the charges against him.

Moreover, Defendant fails to set forth any prejudice suffered as a result of the defect in the complaint. He simply maintains that he had no reason to apply for or secure an occupancy permit because the subject property was a "single family dwelling" at all times. He continues to maintain that the use of the property did not change despite overwhelming evidence that the property no longer met the definition of a "single family" dwelling as defined in Title 9 of the Pittsburgh Code of Ordinances Section 926.76(b). This section of the Code is cited in both

the Notice and the private criminal complaint. The Court, therefore, concludes that Defendant suffered no prejudice as a result of the defect in the complaint. There was no surprise to Defendant regarding the charges against him given the contents of the Notice and the complaint, taken as a whole.

Finally, Defendant presents constitutional challenges to Title 9, Section 926.76(B) of the Pittsburgh Code of Ordinances. In his Concise Statement of Matters Complained of on Appeal, he argues that the provisions of Section 926.76(B) violate the due process and equal protection provisions of the 14th Amendment to the United States Constitution as applied to Defendant and on their face because the provisions are clearly arbitrary and unreasonable and have no substantial relation to public health, safety, morals or general welfare.

When the constitutionality of a zoning ordinance is challenged, there is a presumption that the ordinance is valid and the party challenging its validity has a heavy burden to prove that it is unconstitutional. *Farley v. Zoning Hearing Board of Lower Merion Township*, 636 A.2d 1232, 1236 (Pa.Cmwlth. 1994); *Layne v. Zoning Board of Adjustment of Pittsburgh*, 501 Pa. 224, 460 A2d 1088 (1983). An ordinance is valid if it promotes public health, safety or welfare and its

provisions are substantially related to the purpose it is to serve. The lack of any rational relationship to a legitimate governmental purpose must be obvious and if the validity is debatable, the provision must be upheld. *Layne. supra.*

While Defendant briefly argued the constitutionality issue at oral argument on January 23. 2015, he produced no evidence or specific allegations as to why or how the zoning ordinance is unconstitutional either on its face or as applied to Defendant at the hearing on Defendant's summary appeal. In his Concise Statement of Matters Complained of on Appeal, he again raises the issue but provides no detail at all to identify the pertinent issues. Pa.R.C.P. 1925(b)(4)(ii). Defendant has failed to identify how this particular section of the zoning ordinance, which defines "family," violates the 14th Amendment of the United States Constitution. There has been no evidence produced in support of his contentions. Because of this insufficiency of detail and the lack of evidence to support Defendant's argument, the presumption that the ordinance is valid has not been defeated. The Court cannot engage in speculation. The lack of any rational relationship of the ordinance to the legitimate purpose of the City's government is not obvious. (See Layne, supra.

For all of the foregoing reasons, the Court properly found Defendant guilty of 3 violations of the City of Pittsburgh Code of Ordinances and imposed a fine in the amount of $15,000.00 plus costs.

By the Court

_____ S. J.

Copies to:

Kenneth J. Yarsky, II, Esq.
Sherrard, German &Kelly, P.C.
535 Smithfield Street, Ste300
Pittsburgh, PA 15222

Celia J. Liss, Esq.
City of Pittsburgh, Department of Law
City County Building, 3rd floor
414 Grant Street
Pittsburgh, PA 15219